THE LENOX CONSTRUCTION COMPANY *vs.* THE
COLONIAL CONSTRUCTION COMPANY.

Third Judicial District, Bridgeport, October Term, 1918.
RORABACK, WHEELER, BEACH, GAGER and CURTIS, Js.

Article 5 of the building contract adopted by the American Institute
of Architects and now in general use, provides that if the con-
tractor shall refuse or neglect to supply skilled workmen and proper
material, or shall fail to carry on the work with promptness and
diligence, and the architect shall certify that such default warrants
it, the owner may terminate the employment of the contractor and
finish the work at his expense, and that the amount of such ex-
pense, when audited and certified by the architect, shall be con-
clusive. *Held* that these provisions, which were in the nature of
conditions precedent, were to be strictly followed; and that a
certificate of the architect which failed to find that the refusal or
neglect of the contractor was a sufficient ground for terminating
the contract, did not comply with this clause and furnished no
basis for a recovery by the owner of the expense incurred by him
in completing the building, especially if—as in the present case—
it did not appear that such expense had ever been audited and
certified by the architect.

The failure of the plaintiff to deny an allegation in a counterclaim
which quotes a part only of a clause or paragraph of a contract
which is recited in full in the complaint and which has already
been admitted as true by the defendant in his counterclaim, does
not preclude the plaintiff from relying upon the omitted part or
portion of the clause in question; for the defendant cannot in this
way blot out, or materially modify, what he has just admitted to
be true.

The parties were at issue as to the value of the contractor's services and
whether he had been paid $295 thereon, as he admitted, or $636,
as the owner contended. The trial judge in alluding to the con-
tractor's claim, told the jury that he was entitled to the reasonable
value of his services, less $295 or *$345*, as they found the facts.
*Held* that inasmuch as it was apparent from the amount of the
verdict that the jury must have found the contractor had been
paid only $295, the inadvertent reference of the court to the
erroneous sum of $345 could have resulted in no harm to the
defendant.

Argued October 25th, 1918—decided January 30th, 1919.

ACTION to recover for work and labor and materials furnished under a building contract, and for the conversion of the plaintiff's tools, scaffolding and other appliances, brought to the Superior Court in Fairfield County and tried to the jury before *Maltbie, J.;* verdict for the plaintiff for $5,038, of which $111 was remitted, and judgment for the plaintiff for $4,927, from which the defendant appealed. *No error.*

The complaint at first contained three counts. By agreement of the parties the second count was eliminated during the trial of the case. The first and third counts of the complaint allege that the plaintiff and defendant, on March 21st, 1917, entered into a written contract by which the plaintiff was to provide all the materials and perform all the work for the lathing and plastering of three apartment buildings in the city of Bridgeport, for which the defendant was to pay $9,500; that the plaintiff with his employees began work April 27th, 1917, and continued to work until the 28th day of June, 1917, at which time it was required to suspend work in order that a plumber employed by the defendant might perform his part of the contract on the buildings, which, as the plaintiff was notified, would require two or three weeks; that the plaintiff thereupon engaged in other work until July 9th, 1917, when it returned to the buildings for the purpose of resuming work, and then it was informed by the defendant that it would not be allowed to do any further work on the buildings and that its contract was at an end; that the defendant then took possession of the plaintiff's tools and appliances and converted them to its own use; that at this time the plaintiff had rendered services and furnished materials of the reasonable value of $3,333.02, of which sum but $295 had been paid; and that the reasonable value of the tools and implements which the defendant converted to its own use was $3,000. It also appears

that the plaintiff introduced evidence to show and claimed it had shown that the allegations of its complaint were proven and true.

The defendant in its answer admitted that it made the contract, that the contract price was to be as alleged and claimed by the plaintiff, and denied all the other allegations and claims of the plaintiff. It was also averred in the defendant's answer that the plaintiff neglected to prosecute diligently the work called for in the contract, and that, after receiving notice of such neglect from the architect, the defendant gave notice in writing to the plaintiff, in substance, that if it did not, within three days thereafter, employ a sufficient number of men to complete the contract without delay, the contract would be cancelled; that the defendant would take possession of the tools and appliances and complete the work with other workmen; and that all of the expenses incurred by reason of the plaintiff's default would be charged to its account in accordance with Article 5 of the contract. The defendant further averred in its answer that the plaintiff did not proceed to employ men to complete the work without further delay, and that thereupon it considered the contract cancelled and took possession of the premises, tools and appliances. The defendant offered evidence to prove and claimed to have proven the averments set forth in its answer, and that it had shown that it had complied with the terms of its contract.

No evidence was offered by either party to prove that the expenses incurred by the defendant in completing the work had ever been audited and certified by the architect.

The averments in the defendant's answer and counterclaim were met by a general denial in the plaintiff's reply and answer thereto. Later on, the defendant filed a so-called substituted counterclaim, alleging the

same affirmative facts set forth in its answer. In this so-called counterclaim, Article 5 of the contract is recited as follows: "Art. V. Should the Contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the Architect, the Owner shall be at liberty, after three days written notice to the Contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the Contractor under this contract; and if the Architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the Owner shall also be at liberty to terminate the employment of the Contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon." An examination of Article 5 of the contract discloses that the defendant, in purporting to recite this paragraph, entirely omitted the following: "and to employ any other person or persons to finish the work and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractor they shall not be entitled to receive any further payment under this contract, until the said work shall be wholly finished; at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Owner in finishing the work such excess shall be paid by the Owner to the Contractor; but if such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. The expense incurred by the Owner as herein provided, either for

furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the Architect, whose certificate thereof shall be conclusive upon the parties." The plaintiff did not deny this paragraph of the counterclaim, but it denied paragraph 7 thereof, which reads as follows: "On account of the failure of the plaintiff to carry out its said contract, the defendant was required to expend in the completion of said contract the sum of $16,212.73."

*William A. Redden,* for the appellant (defendant).

*Henry E. Shannon,* for the appellee (plaintiff).

RORABACK, J. The errors assigned by the defendant all relate to the instructions given to the jury. Error is assigned to one part of the charge bearing upon the defendant's counterclaim, to the effect that the defendant had no right to recover upon its counterclaim, because it appeared that "there was no auditing and certifying of the amounts which were expended by the defendant in carrying out the contract to its completion, which is a condition precedent to a recovery upon that phase of the contract." The contract provided this as a condition precedent, and an omission to show this by the defendant was an objection which, if well taken, was fatal to the defendant's right to recover upon its counterclaim. *Hoyt* v. *Pomeroy,* 87 Conn. 41, 45, 46, 86 Atl. 755.

But the defendant now claims that the plaintiff is precluded from raising this question, because it failed to deny the allegations of the counterclaim which recited the provisions of Article 5 of the contract. It is undoubtedly true, as the defendant contends, that any material allegation in a counterclaim or other pleading not controverted by the reply, is deemed to

be admitted. It is also undoubtedly the rule that only such facts are admitted as are well pleaded. The plaintiff made this written agreement a part of its complaint. This agreement recites in full Article 5, which, among other things, provides that the expenses incurred by the defendant shall be audited and certified by the architect. The counterclaim itself, in paragraph one, admits that the defendant made such an agreement. This admission was made just before the purported recital of Article 5 of the contract in paragraph three of the counterclaim, which omitted all reference to the certificate of the architect. The defendant cannot in this way blot out, or materially modify what it had just conceded to be true in its counterclaim, as to the terms of this written agreement. Technically speaking, this repugnant pleading should have been corrected at an earlier stage of the case, but this was not done, and the trial court, when instructing the jury, was confronted with two allegations in the counterclaim, disagreeing with each other upon a vital point in the case; the first showing a provision of Article 5 in the contract which required an auditing and certification by the architect, and the latter so stated by the defendant that it appeared that Article 5 of the contract contained no such provision. It is apparent that the trial court regarded as untrue those allegations of the defendant respecting Art. V, which were repugnant to its admission already made in its counterclaim. In this there was no error. *Gulliver* v. *Fowler*, 64 Conn. 556, 30 Atl. 852.

The defendant also complains of the instructions of the court as to the plaintiff's claim for damages for the alleged conversion of the personal property of the plaintiff, which was as follows: "You must give a verdict for the plaintiff for the reasonable value of the materials which were taken over by the defendant." The record

discloses that the jury were also instructed upon this subject that the contract provided that "if the contractor fails to carry on the work with promptness and diligence and supply a sufficiency of workmen, or fails in any other of his agreements, such refusal, neglect or failure being certified by the architect, the owner shall be at liberty after three days written notice to the contractor, and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, he shall be at liberty to terminate the agreement and carry on the work himself." The judge also said: "I cannot read that counterclaim without holding that it is based upon the second part of that agreement which gives the defendant under certain circumstances the right to terminate the contract and enter on the work himself. Regarded from that standpoint the certificate of the architect is not in accordance with the contract." It further appears that upon this branch of the case the trial court also said to the jury: "There is no question in the case that these tools and materials were taken over by the defendant and used by him in carrying on the work. There is no question but what they were demanded of the defendant by the plaintiff, and that he refused to give them up until such time as the work was done." In speaking of the justification upon which the defendant relied for taking personal property of the plaintiff, the trial court, among other things, said to the jury: "My reason for saying that, is that there is no certificate . . . such as the contract provides as a condition precedent to his taking over the work; and in the second place, it doesn't seem to me that there was ever really any termination of the contract within the terms of the agreement."

The instructions of the court upon this point were well within the principles of law laid down by us in the case of *Valente* v. *Weinberg*, 80 Conn. 134, 136, 67 Atl.

369, and in *Hoyt* v. *Pomeroy*, 87 Conn. 41, 45, 46, 86 Atl. 755. Article 5 of the contract provides, as a condition precedent to the defendant's right to terminate the contract, that the architect shall not only certify that there has been a refusal, neglect or failure upon the part of the plaintiff, but also that such refusal, neglect or failure is a sufficient ground for the termination of the contract. An examination of the architect's certificate now before us discloses that there is an absence of a finding by the architect that such negligence and refusal are a sufficient ground for the termination of the contract by the defendant. This was not a compliance with the requirements of the contract to certify the architect's own judgment as an arbiter between the parties. It appears that the certificate of the architect afforded no justification for the action of the defendant as set forth in its counterclaim; and it was for the jury to decide whether there was a failure, neglect or refusal on the part of the plaintiff to comply with the provisions of the contract, and also the question of damages. The issues arising upon the allegations of the complaint upon these points were carefully and fully explained to the jury by the trial court, and the instructions upon these questions were correct in law and sufficient for the guidance of the jury in coming to the verdict that was rendered.

The plaintiff claimed and offered evidence to show that when the defendant refused to allow it to resume work on the building, the plaintiff had rendered services of the value of $3,333.02, of which $295 only had been paid. The defendant denied the alleged value of the services, and offered evidence to show that it had expended $636.05 in paying workmen whom the plaintiff owed when work was stopped upon the building. The trial court properly and at length instructed the jury upon this branch of the case, but in another

part of the charge the jury were told that they might allow the plaintiff for the reasonable value of the services rendered, less whatever payments they found the defendant "ought to be credited with, $295 or $345," according to the facts found. Although the statement as to the $345 was incorrect, it does not necessarily follow that this warrants a new trial. The record shows that the jury must have adopted the minimum amount of $295, properly referred to by the court. This they could not have done under the instructions given, without finding that the sum of $295 was all that the defendant could recover of its claim on account of alleged payments. From this it is apparent that the jury did not regard the defendant's claim of any weight, and that no harm came from this inadvertent statement of the court.

There is no error.

In this opinion the other judges concurred.