THE CLOVER MANUFACTURING COMPANY *vs.* THE
AUSTIN COMPANY.

* First Judicial District, Hartford, May Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and ELLS, Js.

If payments under a building contract are to be made upon the issuance of an engineer's or architect's certificate, the certificate is a condition precedent to the right to payment, and it cannot be attacked except by showing that it was made in bad faith; but "bad faith" does not necessarily imply fraud or dishonesty on the part of the engineer or architect, for it may justly be said to exist where he fails to exercise the care to be expected of his calling in ascertaining the facts upon which his certificate is based, or where he disregards the plain terms of the contract.

In the present case, the finding recited that after the plaintiff's engineer had refused to approve the defendant contractor's estimate for payment of $33,400 (such approval being required by the contract), he submitted a report of his own in which he incorrectly stated the contract price and the payments already made, ignored the contract provision allowing a percentage for overhead and profit, certified that the buildings were not more than one half completed whereas they were in fact substantially more than one half com-

---

* Transferred from third judicial district.

pleted, and recommended a payment of $17,100. *Held* that the defendant was entitled to recover $26,700—the amount actually due under the contract—although there was no finding of fraud, dishonesty or bad faith on the part of the engineer, especially in view of the fact that the plaintiff wrongfully terminated the contract before the defendant had an adequate opportunity to revise its estimate.

A mere notice from the defendant that it elected to terminate the contract because of the plaintiff's refusal to pay instalments due thereunder did not constitute a wrongful abandonment or anticipatory breach, where the subsequent conduct of the defendant in continuing to work until ejected from the premises by the plaintiff amounted to a renunciation of its intention as expressed in the notice, and where the plaintiff continued to insist that the defendant completely perform the contract and made no claim of abandonment or anticipatory breach until this case was referred to a State Referee for trial.

The pleadings reviewed and *held* to raise the issue whether the plaintiff wrongfully ousted the defendant from the premises.

Argued May 8th—decided July 11th, 1924.

ACTION for damages for the alleged breach of a building contract by the defendant contractor in which the defendant filed a counterclaim for damages and a cross-complaint for foreclosure of a mechanic's lien. The case was referred to a State Referee who reported that $23,065.55 was due defendant and secured by its mechanic's lien. The Superior Court in Fairfield County (*Haines, J.*) sustained a demurrer to the plaintiff's remonstrance to the acceptance of the report of the State Referee and entered a judgment of foreclosure of the defendant's mechanic's lien, from which the plaintiff appealed. *No error.*

The pleadings are voluminous, but as the result of the rulings on motions not involved in this appeal, the issues submitted to the State Referee were confined to the questions whether the plaintiff had fulfilled all its obligations under the building contract; whether the defendant had supplied sufficient men and materials and had prosecuted the work with promptness and

diligence; whether the defendant had wrongfully terminated and abandoned the work before completion; whether the plaintiff without cause ejected the defendant from the premises and prevented it from completing the work; and the amount of the damages to be awarded upon the facts as found by the referee.

In substance the referee found all these issues of fact for the defendant, and reported accordingly, finding a balance due the defendant of $23,065.55. The contract in question was a lump sum contract for the erection of a manufacturing building, administration building, and boiler house, together with mechanical equipment, for a price finally fixed at $91,607; all to be completed within seventy working days from June 18th, 1919, except the manufacturing building, which was to be completed within forty-five working days. It appears in the report of the referee that from the commencement the work was hampered and delayed by numerous controversies between the parties. One of the clauses of the contract required that the owner "co-operate with the builder to the end that this contract may be promptly and properly performed"; and the referee finds that the plaintiff did not so co-operate, and in this respect did not fulfil its obligations under the contract. As to the responsibility for delay caused by the numerous controversies between the parties, the referee finds that "the delays incident to the continuous changes and exactions required by the plaintiff far exceeded any delays occasioned by the defendant," and also that no serious complaints were made by the plaintiff prior to August 15th in regard to the lack of sufficiency of men or materials, except as to one matter not now in controversy.

The finding of the referee as to the sum due the defendant under its contract for work done and materials

furnished and not paid for, is attacked by the reasons of appeal, and the facts are stated in the opinion.

The remaining question, whether the defendant wrongfully abandoned its contract, or was wrongfully ejected from the premises by the plaintiff, is also brought here for review, and the facts are stated in the opinion.

*William H. Comley* and *Edward J. Quinlan,* for the appellant (plaintiff).

*Raymond E. Hackett,* with whom, on the brief, was *Homer S. Cummings,* for the appellee (defendant).

BEACH, J. Appellant pursues reasons of appeal six to eleven inclusive. The questions thus raised are whether the Superior Court erred in overruling the plaintiff's remonstrance to the report of the State Referee in the particulars pointed out in an amendment to the reasons of appeal filed March 24th, 1924, and in rendering judgment for the defendant upon its counterclaim and cross-complaint.

Reason of appeal six is that the court erred in overruling paragraph B–1 of the plaintiff's remonstrance, to the effect that the report should not be accepted for the reason apparent on its face that "on page 17, the committee finds that the report of Dane was inadequate, erroneous and not warranted by the contract, but there is no hint of dishonesty, fraud or bad faith, and therefore the effect of the decision by him cannot be avoided." The report of Dane, the plaintiff's engineer, related to the amount due the defendant. The contract required the owner to provide a competent engineer. Mr. McElroy, the engineer originally appointed, was taken ill, and on or about August 22d plaintiff appointed Mr. Dane in his place. The con-

tract also provided that "payments shall be made by the owner as follows: A sum equal to ninety per cent (90%) of the amount, as estimated by the builder, and approved by the engineer, of work completed and material furnished during each month shall be paid on or before the 5th of the following month."

On September 2d, the defendant sent its estimate claiming $33,486 as the amount due and payable on or before September 5th. Mr. Dane would not accept these figures, but reported to the plaintiff that the buildings were not more than one half completed, and upon that basis recommended a payment of $17,140. The referee finds that Mr. Dane's report did not correctly state the contract price, nor the amounts of payments already made, that it ignored an allowance of 10% due for overhead and profits; that the buildings were in fact substantially more than one half completed, and that a balance of $26,714.85 was due the defendant, assuming that there were no offsets for defective construction or material; and in summing up the matter the referee finds that the method of ascertaining the amount due adopted by Mr. Dane, who had actually been upon the ground only some five or six days, "was inadequate, erroneous, and not warranted by the contract." It is further found that "Mr. Dane was greatly in fault in certifying as he did, that the work was only about one-half completed, and that the plaintiff was equally blamable in accepting and claiming said certificate to be correct." Nevertheless the plaintiff claims that Mr. Dane's report must be accepted at its face value because there is no finding that it was the product of fraud, dishonesty or bad faith.

In the first place, it is to be noted that the contract, although it contemplates that the builder's estimate of the amount of work done and materials furnished during each month shall be approved by the engineer

before payment, does not in terms authorize the engineer acting alone to fix the amount due, and does not in terms provide that his estimate of the amount due shall be conclusive.  But even if the contract had so provided, we are of opinion that the law requires something more of an engineer to whom such authority is given than the mere negative virtue of not acting dishonestly, fraudulently or in bad faith.  By accepting the position of an umpire upon whose decisions the parties agree to rely, an engineer assumes a positive responsibility, and impliedly agrees that in making his decisions he will exercise the care to be expected of his calling to ascertain the facts, and will be governed by the terms of the agreement between the parties.    In this instance the referee explicitly finds that Mr. Dane has not done either of these things, and is blamable for not having done them.  The contract has now been terminated, and on the referee's findings the court did not err in refusing to hold that the defendant is concluded in this action by Mr. Dane's hasty and uninformed estimate made in violation of the contract.

We do not intend in any way to question the authority of our previous decisions holding, in effect, that where, in building contracts, payments are to be made upon the issuance of an architect's or engineer's certificate, the issuance of the certificate is in the nature of a condition precedent, and that the certificate cannot be attacked, if made in good faith; or, as we have said in some cases, cannot be attacked except by showing that it was made in bad faith.  *O'Loughlin* v. *Poli,* 82 Conn. 427, 74 Atl. 763; *Beattie* v. *McMullen,* 82 Conn. 484, 74 Atl. 767; *Chatfield Co.* v. *O'Neill,* 89 Conn. 172, 93 Atl. 133; *Lenox Construction Co.* v. *Colonial Construction Co.,* 93 Conn. 234, 105 Atl. 467.  We do say that the term "bad faith" as used in such cases may be evidenced by conduct falling short of fraud or dis-

honesty. The parties bargain for some reasonable degree of expert knowledge of the facts and the contract, and an engineer who fails to give the parties what they bargained for, to the extent indicated by the referee's findings in this case, may justly be said to have acted in "bad faith" as regards the performance of his contractual obligations. It should also be said that the engineer's estimate was not received at the defendant's New York office until September 17th, and on September 26th the defendant was ejected from the premises; so that no adequate opportunity was given to obtain a revision of the estimate before the contract came to an untimely end.

Reasons of appeal seven and eight are directed to the claim that the referee went outside of the issues raised by the pleadings in finding that the plaintiff wrongfully ousted the defendant from the premises on September 26th. This claim will be best answered by quoting paragraphs twelve of the second defense, seven of the reply and two of the rejoinder:

"12. By reason of the plaintiff's default the defendant has been prevented from performing the covenants and conditions of the contract on its part to be performed. Except to the extent aforesaid and to the extent that it was prevented by the plaintiff from so doing, the defendant has duly performed the covenants and conditions of the contract on its part to be performed. 7. Paragraph 12 is denied, and the plaintiff further says the defendant failed, refused and neglected within three days as provided in said contract and notice to supply a sufficient number of properly skilled workmen or sufficient materials of the proper quality, and the plaintiff thereafter entered upon the premises and took possession and employed other persons to complete the work and provided proper materials therefor. 2. As to paragraph 7 of the reply,

it is denied that the defendant failed, refused and neglected within three days, as provided in said contract and notice, to supply a sufficient number of properly skilled workmen, or sufficient materials of a proper quality." These affirmations and denials plainly put in issue the truth of the matters alleged by the plaintiff in justification of the ouster set forth in paragraph seven of its reply.

Reasons of appeal nine, ten and eleven all assume that the defendant repudiated the contract on September 22d, and upon that basis the claim is made that such repudiation was accepted and acted upon by the plaintiff as a wrongful termination of the contract by the commencement of this action on September 24th before such repudiation was withdrawn. This claim runs counter to the findings of the referee. He finds that the defendant did on September 22d send a letter to the plaintiff which was received on September 24th, in which, after referring to Mr. Dane's refusal to approve the estimate of work and material furnished during the month of August, the defendant continued: "Accordingly we notify you, as provided in article 8th of our contract, that you have failed to pay us the amount of our estimate within seven days of its maturity and presentation, and that we elect to terminate the contract, and that we shall enforce payment from you for all work executed and all damage and loss sustained upon the plant or materials, including our profit and damages."

The referee also finds, however (1) that the defendant renounced its intention to terminate the contract, and (2) that the plaintiff did not accept or construe the defendant's letter of September 22d as an abandonment by it of its contract. In more detail the referee's findings as to point (1) are, that the defendant did not cease working on the job, but continued working and

furnishing material down to and including part of September 26th, when the plaintiff formally demanded that the defendant turn over to it all material and work and leave the job, and enforced its demand by bringing a sheriff on the premises who told the defendant's superintendent that he was there to put them off the job and would use force, if necessary. As to the plaintiff's conduct in response to the letter of September 22d, it is found that on September 24th the plaintiff replied by letter in which, after noting that the engineer had not certified to the amount claimed by the defendant to be due, it wrote: "We therefore fail to see how you can legally elect to terminate the contract under article 8 of the same." It is further found that on the same September 22d the plaintiff sent by registered mail to the defendant a letter in fact written and prepared on September 20th, which after summarizing the plaintiff's grievances, mainly the insufficiency of men and materials on the job, notified the defendant to immediately take steps to protect its interests under article seven of the contract. Enclosed with the letter was a report from plaintiff's engineer certifying that there was an insufficient supply of material and men, and advising the plaintiff to notify the defendant that unless this condition was immediately remedied it would take over the job and complete the work. Article seven of the contract provides that should the builder refuse or neglect to supply a sufficient number of properly skilled workmen, or sufficient material of the proper quality, "such refusal, neglect, or failure being certified by the engineer, the owner shall be at liberty, three days after service of written notice on the builder (within which time the builder may perform such covenant), to provide any such labor or materials and to deduct the cost thereof from any money then due, or thereafter to become due, to the builder under

this contract." There is no provision in the contract authorizing the owner to eject the contractor from the job for failure to supply sufficient men or materials. Upon the same day that the above-described letter was mailed, and without waiting for the three days to elapse after the service of the notice, the plaintiff instituted this action on September 24th; and the breach alleged by the original complaint is not that the defendant wrongfully abandoned work under the contract, but that it had neglected to complete the work within the time limited by the contract, and further that it neglected to supply a sufficiency of workmen and materials, and that such neglect had been certified by the engineer as provided in article seven of the contract. From these findings and from the allegations of the original complaint, it is clear that as a matter of law, the contract had not been terminated by an anticipatory breach initiated by the defendant's letter of September 22d, and completed by the plaintiff's action thereon, at or before the commencement of this suit. There is nothing in the subordinate facts found or apparent on the record which is legally inconsistent with the finding of the referee that the contract remained in full force and effect until September 26th, when the defendant was ejected from the premises. This issue being found for the defendant, it was entitled to judgment on the counterclaim as well as on the cross-complaint.

Following the pleadings further, it appears that the plaintiff, in its reply to the counterclaim, admitted that the defendant on September 22d notified the plaintiff of its election to terminate the contract, but alleged that the notice was not given until after the plaintiff's engineer had certified to the defendant's neglect to supply a sufficiency of men and materials; and that thereafter the plaintiff, acting on the engineer's certificate, entered on the premises and took possession. It

thus appears that throughout the earlier stages of this litigation the plaintiff was asserting that the contract was brought to an end by its own initiative in ejecting the defendant, and not by the defendant's initiative in electing to terminate the contract for nonpayment of money due.

In February, 1922, after the cause had been referred to the State Referee, the plaintiff shifted its position and amended its complaint by alleging that the defendant wrongfully abandoned performance of its contract. By that amendment the plaintiff, for the first time in the history of this transaction, intimated an election to accept the defendant's notice of September 22d as a wrongful termination of the contract. Of course, it was then too late for the plaintiff to take that position; and although, for some purposes, the amendment relates back to the date of the original complaint, it cannot alter the fact that the plaintiff did not give timely notice of an election to treat the defendant's notice as a wrongful termination of the contract, but, on the contrary, preferred to act upon its own initiative, and to eject the defendant from the premises while it was still continuing to perform.

There is no error.

In this opinion the other judges concurred.