WASSERMAN THEATRICAL ENTERPRISE, INC. v.
JED HARRIS

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 14—decided December 26, 1950

*Alexander Winnick*, with whom was *Alvin M. Murray*, for the appellant (plaintiff).

*Louis Evans*, with whom was *Jack H. Evans*, for the appellee (defendant).

BROWN, C. J.   The plaintiff brought this action to recover damages for the defendant's failure to produce a theatrical performance as provided in a written contract between the parties.   The court rendered judgment for the defendant and the plaintiff has appealed.

These facts are not in dispute:  On October 30, 1946, the plaintiff entered into a contract with the defendant whereby the latter agreed to present Walter Huston in a theatrical performance entitled "The Apple of His Eye" at Worcester, Massachusetts, on the night of December 16, 1946.  The contract contained this provision: "[T]his agreement and the terms hereof shall be subject to the customs governing uncontrollable circumstances, such as . . . illness of any of the chief artists of the said attraction and the like, and . . . upon the happening of any of such events no claim for compensation or damages shall be made by either party as against the other."  The plaintiff, which had been

engaged in theatrical productions in Worcester for some eleven years, had reason to anticipate a profit from the production and went to considerable expense and effort in preparing to stage it. On December 12, 1946, the defendant canceled the performance on the ground of Huston's illness. At the same time, bookings for Ithaca, Springfield and Rochester, scheduled to follow that for Worcester, were also canceled. The plaintiff has received nothing for its loss incident to the cancellation of the performance and has been at all times ready, able and willing to perform its obligations under the contract. The show, with Huston as leading man, had been on the road since the early fall of 1946. After eight performances a week had been given for four weeks in Boston, it opened in New Haven on December 12, 1946, for four performances and closed on December 14. As scheduled, the show opened for a month in Chicago on December 25. Huston participated in every performance given and had no understudy.

The defendant alleged as a special defense the provision of the contract quoted above, that Huston was the chief artist and essential performer in the production, and that by reason of his illness performance of the contract on December 16, 1946, was rendered impossible on the part of the defendant. Whether the court was warranted in sustaining this defense and, in reliance thereon, rendering judgment for the defendant is the question for determination. "One who engages for performance of such personal character that it can be performed only by a particular person is excused from liability by the physical incapacity of that person, before breach of the contract, unless he has clearly assumed the risk of such incapacity . . . . Generally it is the promisor himself who is to render the personal services, but the principle is applicable to

contracts where the promisor has agreed that a third person shall render such services and the latter becomes physically unable to do so. . . ." 6 Williston, Contracts (Rev. Ed.) § 1940. The quoted provision of the contract therefore is substantially declaratory of the condition which arises by implication in an agreement of this nature. An agreement for personal services, in the absence of a manifested contrary intention, is always subject to the condition, implied by law, that the person who is to render the services shall be able to perform at the appointed time. 5 Page, Contracts (2d Ed.) § 2683; Restatement, 2 Contracts § 459; *Spalding* v. *Rosa*, 71 N. Y. 40, 44; 12 Am. Jur. 952, § 376; 17 C. J. S. 957, § 465.

In the view which we take of the case, the only conclusion of the court requiring consideration was that Huston's apprehension as to the state of his health was reasonable and reasonably justified the defendant in canceling the performance. The rule quoted is amplified by this further principle: "Where a promisor apprehends before . . . the time for performance of a promise in a bargain . . . that performance will seriously jeopardize his own life or health or that of others, he is not liable, unless a contrary intention is manifested or he is guilty of contributing fault, for failing to begin . . . performance, while such apprehension exists, if the failure to begin . . . performance is reasonable . . . . In determining whether a promisor's failure to begin . . . performance is reasonable . . . consideration is given to (a) the degree of probability, apparent from what he knows or has reason to know . . . of physical or pecuniary harm or loss to himself or to others if he begins . . . performance, and (b) the extent of physical or pecuniary harm or loss to himself or to others likely to be incurred by attempting performance as compared with the amount of harmful consequences likely to be caused

to the promisee by non-performance." Restatement, 2 Contracts § 465. "Out of regard for human welfare the rule is often applicable . . . though performance is not only practicable but is not increased in difficulty. The possible consequences of performing may be so injurious as to free the promisor; and the fact that it later appears that no harmful consequences would have ensued does not alter the rule. The promisor is not bound to perform so long as failure to perform is reasonable because of existing grounds for apprehension." 2 id. § 465, comment b. "The extent of the harmful consequences apprehended, and the probability of their occurrence involve questions of degree. Exact boundaries cannot be fixed, but the harm apprehended must be serious and the apprehension reasonable." 2 id. § 465, comment c.

The further facts established by the finding as corrected and material upon this issue, which is sufficiently raised by the special defense, may be thus summarized: While playing in Boston, Huston, for some two weeks prior to December 12, experienced a tickling sensation in his throat, and during this time the condition became progressively worse. As often as two or three times during a performance he experienced a tightening of his throat. Although use of a medication afforded him temporary relief, he had similar difficulty while performing on the stage in New Haven on December 12, 13 and 14. His throat condition was a continuous and increasing cause of worry to him, for he was constantly in fear during a performance that he would be unable to finish it. This fear did not affect him in social intercourse off the stage, but because of his apprehension that he could not go on with the show in the face of the recurring throat sensation he wanted to find out definitely the nature of his ailment. Had he kept the engagement in Worcester, and had his throat

tightened, he probably could have completed the performance with the aid of lozenges. He had consulted a doctor in New York three or four times in the spring of 1946. The only doctor Huston consulted during November and December, 1946, was Dr. Loyal Davis, his personal friend, who, after hearing his symptoms, though no examination was made, advised him to go to Chicago for a complete and thorough examination and to have the condition attended to. Huston's throat attacks were becoming more frequent and he felt impelled to do something about them without delay. While he believed he could complete the New Haven engagement, he insisted upon canceling all performances for the week of December 16 in order to look after his throat condition immediately, for he believed it would be impossible for him to continue after concluding in New Haven. He was gravely concerned over the consequences of any delay in procuring medical attention.

From New Haven he proceeded to Chicago. A minor operation was performed on his throat at a hospital there and specimens of tissue were taken. The report that these disclosed no malignant condition relieved his mind, and he was able to resume his next scheduled performances in Chicago, where he played every performance. Huston was a man with a sincere desire to carry out his obligations. During his entire theatrical career of forty-five years, the only request which he had made for the cancellation of a performance was for the one at Worcester. The court's conclusion that Huston's fear and apprehension that his illness was of such a nature that it would, in the absence of immediate expert medical attention, seriously jeopardize his health and particularly his voice was a reasonable one and was warranted upon the facts set forth in the preceding paragraph. Under the prin-

ciples recited above, it justified the further conclusion of the court that the defendant was not liable for the cancellation of the contract.

There is no error.

In this opinion the other judges concurred.