FRANK GRENIER ET AL. *v.* COMPRATT CONSTRUCTION
COMPANY
(10660)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued December 9, 1982—decision released February 1, 1983

*Alfred J. Jennings, Jr.,* with whom, on the brief,
was *Robert A. Harris,* for the appellant (defend-
ant).

*Jackie Chan,* for the appellees (plaintiffs).

PETERS, J. This case concerns the effect of a pro-
vision in a construction contract that conditions
payment upon a municipal official's certificate of

performance. The plaintiffs, Frank Grenier, John Grenier and Eugene Grenier, brought an action against the defendant, Compratt Construction Company, to recover $25,500 which the defendant had agreed to pay for blasting work performed in the construction of certain roads. The defendants responded with an answer and a counterclaim seeking to enforce a liquidated damages clause in the contract. After a trial to the court, judgment was rendered for the plaintiffs in the amount of $23,000 together with interest and costs. The defendant has appealed.

The trial court's memorandum of decision establishes the following facts, which are not contested on this appeal. After disputes had arisen concerning performance under a subdivision contract negotiated on May 26, 1977, the parties entered into a settlement agreement on May 23, 1978. That settlement agreement, which is the subject matter of this lawsuit, entitled the plaintiffs to $25,500 upon the completion of certain subdivision roads by June 30, 1978. The agreement defined "completion" of the roads as "any . . . work necessary, so far as the subdivision roads are concerned, so that a certificate of occupancy can be obtained on any lot in the subdivision as of 5:00 p.m. on June 30, 1978, and the providing to Compratt of a letter signed by the City Engineer of the City of Danbury, certifying that a certificate of occupancy can be obtained on any lot owned by Compratt Construction Company in the subdivision." Although the roads were in fact satisfactorily completed, the plaintiffs were unable to provide the stipulated letter from the city engineer because the city engineer did not ordinarily write such letters. Instead, the assistant city attorney, by letter of July 10, 1978, authorized

the building inspector to issue certificates of occupancy for the roads in question. Appropriate certificates of occupancy were thereafter issuable and issued.

The contract of May 23, 1978, contained a liquidated damages clause. That clause provided for cumulative weekly penalties to be paid by the plaintiffs to the defendant for failure to complete the roads by 5 p.m. on June 30, 1978. The designated amounts were: $1500 at the end of the first week (July 7); an additional $2000 at the end of the second week (July 14); an additional $2500 at the end of the third week (July 21); and an additional $3000 (or daily per diem portion) for each additional week or part thereof. The defendant conceded that accrual of these damages would terminate upon the sworn testimony of the city engineer on September 7, 1978, that the roads in question were approved for the issuance of certificates of occupancy. The amount so cumulated is, according to the defendant's calculations, $26,571.42.

The trial court concluded, on these facts, that the plaintiffs had failed to complete the roads in question on June 30, 1978, but found that the city attorney's letter of July 10, 1978, constituted compliance with the contract as of that date. Although the court recognized that the parties had seriously bargained for a letter from the city engineer, the court held that the parties' major concern was not the letter itself but what it represented, to wit, whether the roads were acceptable so that certificates of occupancy could be issued. On this basis, the city attorney's letter constituted adequate compliance with the terms of the contract. Because of the delay between the contract's date of performance, June 30, and the city attorney's letter, July 10, the court

found that the defendant had been damaged to some extent, and that such damages were difficult to ascertain. Although the court found the contract's liquidated damages clause as a whole to be invalid as a penalty clause violative of public policy, the court nonetheless awarded the defendant liquidated damages for a delay of one and one-half weeks in accordance with the contractual liquidated damages clause. Accordingly, the court rendered judgment for the plaintiffs in the amount of $25,500 minus $2500, or $23,000 with interest from July 10, 1978. Only the defendant has appealed.

The defendant has essentially pursued three claims of error. It argues that the trial court erred: (1) in applying a substantial performance test to the settlement agreement; (2) in concluding that the settlement agreement had been substantially performed; (3) in failing to enforce fully the settlement agreement's provision for liquidated damages. Since the first two claims both arise out of the contractual provision requiring a letter from the city engineer, we will consider these claims jointly before we turn to the legality of the liquidated damages clause. With respect to all of the defendant's claims, we find no error.

The defendant's principal claim of error is that the trial court failed to give full effect to the provision in the settlement agreement that made the defendant's obligation to pay conditional upon a letter from the city engineer certifying that the defendant could obtain needed certificates of occupancy for its property. Drawing upon cases involving architects' or engineers' certificates, the defendant argues that the city engineer's failure to give a written certification precludes recovery by the plaintiffs. The defendant claims that the court

erroneously applied a substantial performance test to the defendant's conditional contract obligation. We disagree with the defendant's analysis of the relevant cases and of the trial court's memorandum of decision.

It is of course well established that contracting parties are free to impose conditions upon contractual liability. *Brauer* v. *Freccia,* 159 Conn. 289, 293–94, 268 A.2d 645 (1970); *Strimiska* v. *Yates,* 158 Conn. 179, 185, 257 A.2d 814 (1969). Frequently, building contracts provide that a third party, an architect or an engineer, acting in good faith and in the exercise of his best judgment, shall decide when one of the contracting parties has fulfilled the requirements of the contract. In such circumstances, if the architect or engineer withholds certification, and his decision is not arbitrary or made in bad faith, a court is not authorized to substitute its judgment for that of the designated expert. *Maskel Construction Co.* v. *Glastonbury,* 158 Conn. 592, 597, 264 A.2d 557 (1969); *Friend* v. *Green,* 146 Conn. 360, 364–65, 151 A.2d 343 (1959); *Dahl* v. *Edwin Moss & Son, Inc.,* 136 Conn. 147, 153–54, 69 A.2d 562 (1949); *Clover Mfg. Co.* v. *Austin Co.,* 101 Conn. 208, 213, 125 A. 646 (1924); *Chatfield Co.* v. *O'Neill,* 89 Conn. 172, 174, 93 A. 133 (1915).

The regular enforcement of conditions is, however, subject to the competing but equally well established principle that the occurrence of a condition may be excused in the event of impracticability "if the occurrence of the condition is not a material part of the agreed exchange and forfeiture would otherwise result." 2 Restatement (Second), Contracts § 271; 6 Corbin, Contracts

(1962) § 1362; 5 Williston, Contracts (3d Ed. 1961) § 793. Excuse of the condition, in such circumstances, is based upon the presumption that insistence on an impracticable condition was not in the contemplation of the parties when they entered into their contract. 6 Corbin, supra, p. 499; 5 Williston, supra, p. 783. A prime example of an excused condition, in the context of building contracts, arises upon the death or insanity of the architect or engineer who was to have certified performance. If the work has been properly done, presentation of the unavailable architect's or engineer's certificate is excused. See *Hebert* v. *Dewey,* 191 Mass. 403, 410–11, 77 N.E. 822 (1906); 6 Corbin, supra, pp. 503–504; 5 Williston, supra, § 796. Although this court has not had the occasion to adjudicate a case involving an engineer's death or insanity, we have recognized that enforcement of a condition depends upon a finding of the intent of the parties as evidenced by their agreement; *Strimiska* v. *Yates,* supra, 185–86; *McIsaac* v. *Hale,* 104 Conn. 374, 379, 132 A. 916 (1926); and that an agreement for personal services is normally subject to the condition that the person who is to render the services must be able to perform at the appointed time. *Wasserman Theatrical Enterprise, Inc.* v. *Harris,* 137 Conn. 371, 374, 77 A.2d 329 (1950). These cases indicate that Connecticut law is consistent with the statement of the law in § 271 of the Restatement.

The facts of the present case fall somewhere between the usual deference to express conditions and the usual inference of excuse for impracticability. The contracting parties have stipulated for the certification of performance by a city engineer who was not obligated, either by contract or by his employment, to furnish such certification. In con-

tradistinction to the ordinary case where a certificate has not been produced, the engineer has not exercised any judgment that the plaintiffs' performance was wanting. Although physically able to produce the desired certification, he has refused to do so. Given these facts, the trial court was warranted in inquiring whether the failure to produce the engineer's certificate was a material part of the agreed exchange in the contract. The court found that it was not, because the defendant's major concern was not the letter itself but what it represented, "to wit, whether the road was acceptable so that a certificate of occupancy could be issued." In making this finding, the trial court did not, as the defendant alleges, apply a substantial performance test. Instead, the court correctly found that the parties' inability to procure the city engineer's certification entirely excused the plaintiffs from their duty to produce it. This case is therefore similar to *Clover Mfg. Co.* v. *Austin Co.,* supra, 214, where we held that "[t]he parties bargain for some reasonable degree of expert knowledge of the facts and the contract, and an engineer who fails to give the parties what they bargained for . . . may justly be said to have acted in 'bad faith' as regards the performance of his contractual obligations." If an engineer's certificate is excused where, by his actions, he fails to give the parties "what they bargained for," it must be equally excused where the engineer refuses entirely to exercise any written judgment at all.

The court also found that, except for the delay between June 30 and July 10, the plaintiffs had fully performed the material part of the bargained-for exchange, because the roads were then sufficiently completed so that the city engineer in fact

gave his approval and the defendant thereafter was able to obtain its certificates of occupancy. Although the defendant complains about the quality of the plaintiffs' roadwork, it has not challenged this specific factual finding. It is clear that enforcement of the condition would forfeit the plaintiffs' right to the payment which the trial court found it had earned. This case therefore falls within the principles of § 271 of the Restatement. The plaintiffs may recover, not because there has been substantial performance of the contract, but because there has been full performance, the limiting condition having been excused.

The trial court dealt separately with the effect of the delay between the stipulated date of performance, June 30, and the actual date of the letter of the city attorney, July 10. As to this delay, the court awarded the defendant an offset, finding the delay not so substantial as to warrant a finding of breach of the contract as a whole. The fact that a contract states a date for performance does not necessarily make time of the essence. *Kakalik* v. *Bernardo*, 184 Conn. 386, 392, 439 A.2d 1016 (1981); see *Ravitch* v. *Stollman Poultry Farms, Inc.*, 165 Conn. 135, 148, 328 A.2d 711 (1973). The defendant has made no factual showing of how it was injured by the ten-day delay and relies on its liquidated damages clause to defeat the plaintiffs' recovery. Whatever the validity of the liquidated damages clause, however, that clause cannot in and of itself convert a minor delay into so substantial a breach of contract as totally to foreclose the plaintiffs' recovery. The trial court was not in error in affirming the plaintiffs' ability to recover some sum on the contract despite their delay.

The only issue which remains to be addressed is the validity of the liquidated damages clause and the extent of the offset to which the defendant was entitled because of the plaintiffs' partial breach. We agree with the defendant that a contractual provision for liquidated damages is not illegal simply because the clause uses language of "penal" or "penalty." *Berger* v. *Shanahan,* 142 Conn. 726, 731–32, 118 A.2d 311 (1955); 5 Williston, Contracts § 778, pp. 694–95. Nor is such a clause necessarily violative of public policy simply because the amount of damages escalates with the period of delay. To the extent that the trial court ruled to the contrary, it was mistaken. The defendant was not, however, injured by the trial court's mistaken disapproval of the liquidated damages clause, because the trial court awarded the defendant an offset that adopted the formula provided by the liquidated damages clauses. The trial court found that the plaintiffs' performance was delayed for ten days and awarded one and one-half weeks of damages according to the contract's provision for the first two weeks' delay. Having found full performance by July 10, the court could not appropriately have awarded greater damages under the liquidated damages clause even had it found that clause fully enforceable.

There is no error.

In this opinion the other judges concurred.