[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
In this case the City of West Haven had a contract to do certain work with the plaintiff, M.J. Daly Sons, Inc. (Daly). A dispute broke out between the parties and Daly has sued the City in several counts. The first count is a breach of contract claim wherein Daly claims the City breached its contract by not paying Daly the amounts Daly claimed in the form of change order requests. Paragraph 16 of the contracts general conditions as amended by another paragraph provides that all disputes between the City and the contractor will be decided by "the Engineer" in accordance with another paragraph, § 9.11. "The decision of the Engineer shall be final and binding on all parties to the dispute." Section 9.11 provides that the Engineer will be the interpreter of the requirements of the contract and all disputes over acceptability of work and performance and furnishing of the work in respect to changes in contract price or time will be referred to the Engineer in writing with requests for a formal decision.
Paragraph 8.2 of the general conditions of the contract provides that in case of the termination of the employment of the Engineer, the "owner shall appoint an engineer against whom CT Page 833 contractor makes no reasonable objection, whose status under the contract documents shall be of the former engineer."
Parties can certainly agree to whatever terms they want and courts should enforce those contracts. Holly Hill Holdings v.Lowman, 226 Conn. 748, 755 (1993); Connecticut Union of TelephoneWorkers v. SNET Co., 148 Conn. 192, 201 (1961). There is no claim here that the contract as a whole or that these above referenced provisions are voidable on grounds existing at the time of contract formation such as mistake, fraud or unconscionability. Parties can certainly agree that disputes arising under a contract shall be decided a third party acting in good faith such as an engineer or architect or identified panel. John T. Brady Co. v. Stratford, 220 Conn. 432, 450 (1991); M L Building Corp.v. Housing Authority, 35 Conn. App. 379, 382-383 (1994).
Based on its interpretation of the contract provisions, the defendant City has now filed a motion to dismiss the first count of the complaint, the contract claim, asserting that the court has no subject matter jurisdiction to hear the matter. Some of the relevant facts concerning this claim should be discussed.
The contract was entered into between the parties on March 30, 1992. On January 20, 1995, while field work on the project was suspended, the City terminated the employment of the original engineer. On March 24, 1995, the City appointed Black Veatch as successor engineer. An officer of Daly has submitted an affidavit to the effect that Daly was notified of the termination of the original engineer and the appointment of a successor approximately six months later. At no time did the City seek Daly's consent for the appointment of Black Veatch and, according to Mr. Parmalee, the Daly corporation officer, "on numerous occasions after being notified that Black Veatch was more than a `representative', Daly vehemently object." (Page 3 of plaintiff's 12/31/96 memorandum).
The defendant City disputes that Daly made a "reasonable objection" to the City's appointment of Black Veatch as the successor engineer. In its brief, the City makes reference to attached affidavits to support assertions that Daly learned of the City's intention to appoint Black Veatch as the successor engineer . . . back in February 1995" and in fact as of June 19, 1995, when Daley claims to have learned of the appointment, Daly had been working with Black Veatch "in its capacity as the engineer on the project for over two months." (Page 15 of City's CT Page 834 memorandum).
The affidavit of the City Engineer, Abdul Quadir, is quite interesting. He refers to a February 15, 1995 meeting at which a Black Veatch representative, Mr. Parmalee, the City Finance Director, and he were present. At this meeting, Black Veatch was introduced "as the intended successor engineer on the project." (Paragraph 26) (emphasis added). Paragraphs 31 and 36 of the Quadir affidavit state no such objections were received prior to June 17, 1995 suggesting complaints started then. As noted, Black Veatch was appointed March 24, 1995. Field work on the project resumed June 17, 1995.
A city administrator, Mr. Norton, in his affidavit states at paragraph 31 that he advised Mr. Parmalee by letter on June 19, 1995 that it had "come to his attention that the City of West Haven may not have formally notified you that the city has switched project engineers," the prior engineer was no longer engaged on the project, the new "representative" of the city is Black Veatch. Parmalee, according to Norton, did not respond to this letter. Norton goes on to state problems that arose on the job but at no time prior to July of 1995 did Daly advise him it would not accept Black Veatch as an engineer.
A Mr. Francucci, an engineer with Black Veatch also submitted an affidavit. He says that at the above referenced February 15, 1995 meeting city representatives and Black Veatch met with Mr. Parmalee to discuss Black Veatch's "assumption" of the role of engineer. He refers to a call he had with Mr. Parmalee in late February or March in which Mr. Parmalee said Black Veatch would be a good choice and he looked forward to working with that company. Mr. Francucci states that a Mr. Anderson who also was an engineer working for his company phoned Parmalee to tell him Black Veatch was retained by the city to take over for the prior engineer, (par. 25). A memorandum of this conversation is attached to the file.
Mr. Parmalee states in his affidavit the first engineer was terminated in December 1994; he states that Daly received written notice of this termination on June 21, 1995 and on that date was also advised by the city that Black Veatch was retained as the "City's new representative," (Par. 3 4).
In paragraph 6, Mr. Parmalee states that at no time, prior to or after its "retention" of Black Veatch did the city seek CT Page 835 Daly's consent to its appointment of that company (par. 6) and Parmalee goes on to say in the following paragraph that after the June 21st notification Daly objected verbally and in writing to the Black Veatch appointment.
The Parmalee affidavit goes on to question the impartiality of Black Veatch — it was hired as an outside consultant by the city to serve as the city's representative and further the city's interests. The affidavit points out Black Veatch played no part in the design of the project or in the administration of the contract during the first three years of the project (para. 9 
10).
In January 1996, Daly instituted suit over its claim that it was entitled to added reimbursement. In February the defendant moved to dismiss, asserting that Daly had not submitted its claims to the successor engineer and the engineer had not rendered a decision. The Court denied the motion but the defendant moved to stay the case on the same grounds. This motion to stay was also denied. Interestingly, two days after this ruling by the Court, Black Veatch issued a decision on the defendant's claim.
Against this background the defendant city has filed its motion to dismiss which as noted claims the court does not have subject matter jurisdiction to hear the contract claim; that claim was reserved by the contract to the "engineer" who has in fact decided the merits of the plaintiff's claim.
"Subject matter jurisdiction is the power of the Court to hear and determine cases of the general class to which the proceedings in question belong", LeConche v. Elligers,215 Conn. 701, 709 (1990), Shea v. First Federal Savings Loan Assns. O NewHaven, 184 Conn. 285, 288 (1981). In LeConche, the court also said that: "every presumption is to be indulged in favor of jurisdiction," supra 709-710. The plaintiff has brought a claim of breach of contract; no one could seriously suggest that the Superior Court does not have jurisdiction over general claims of this type.
It is really not helpful to analyze what we have here as a question of subject matter jurisdiction. None of the many cases that recognize the previously mentioned rule that parties can agree to have an architect or engineer decide disputes in building contracts and that such agreements must be enforced by CT Page 836 the courts treat the issue as one of subject matter jurisdiction.Grenier v. Compratt Construction Co., 189 Conn. 144, 148 (1983);Maskel Construction Co. v. Glastonbury, 158 Conn. 592, 597
(1969); Friend v. Green, 146 Conn. 360, 364-365 (1959); CloverMfg. Co. v. Austin Co., 101 Conn. 208, 213 (1924); Chatfield Co.v. O'Neill, 89 Conn. 172, 174 (1915); M L Building Corp. v.Housing Authority, 35 Conn. App. 379, 381 (1994). Usually these cases arise in the context of a trial court having issued a decision that is different from or otherwise conflicts with an opinion rendered by the party designated in the contract as being authorized to render a decision on a matter that is in dispute between the parties. It adds a layer of unnecessary complexity to say that the decision in these cases or the enforcement of such clauses in building contracts turns on questions of subject matter jurisdiction. The courts are simply interpreting a contract provision and if a contract provides for a method independent of the courts to resolve a dispute the courts should enforce the contract. But the court has the obligation ab initio, and it is within its jurisdiction in so acting, to decide from reading the contract whether in fact an architect or engineer has been designated to decide disputes and ancillary questions as to whether an architect has been properly appointed or his or her successor has been properly appointed in accordance with contract provisions.
That we are not dealing with questions of jurisdiction as such is indicated by the fact that the court has held that the decision of the engineer in one of these contracts can be attacked if made as a result of fraud or bad faith and "bad faith as used in such cases may be evidenced by conduct falling short of fraud or dishonesty. The parties bargain for some reasonable degree of expert knowledge of the facts, and the engineer, who fails to give the parties what they bargained for . . . may justly be said to have acted in `bad faith' as regards the performance of his contractual obligations." Clover Mfg. Co. v.Austin Co., 101 Conn. at page 214; cf. Chatfield Co. v. O'Neill, 89 Conn. at page 174; Maskel Construction Co. v. Glastonbury, 158 Conn. at page 597. Thus, a trial court has jurisdiction to decide issues of bad faith and thus negate an already arrived at decision of an agreed upon engineer chosen to decide contractual disputes.
How can it be said that we are dealing with jurisdiction considerations? The issue could not be framed in jurisdictional terms once the engineer or architect had made its decision in the CT Page 837 sense that the party adversely affected by the decision could claim it was arrived at in bad faith. If that is the case, how is the issue one of subject matter jurisdiction if suit is brought before the decision is rendered and the state of the pleadings is such that by the special defense and reply to the special defense the dispute between the parties is whether there in fact was an appropriate engineer in place to decide the dispute? That is the case here — Daly claims the original engineer was discharged and there is no engineer to send the dispute to, the City claims an appropriate successor engineer is in place.
The special defense and the response to it should be decided in the ordinary course of litigation.
Daly does not dispute that there is a contract provision here which provides that disputes under the contract must be decided by the project engineer. Neither can or does it deny the effect the courts have given to such provisions. Daly's claim is that there was a project engineer originally assigned to this project but this engineer was discharged and for a variety of reasons Black Veatch should not be regarded as the successor engineer under the terms of the contract. There are a variety of factual disputes between the parties as to whether there was "reasonable objection" to the purported appointment of Black Veatch. When does objection have to be made? Must it be made when the successor is suggested or can objections be reserved until the time formal notice of the appointment is received? What objections were made? When were they made? Do questions of partiality or lack of adequate acquaintance with the project qualify as a "reasonable objection", cf Clover Mfg. Co. v. AustinCo., supra? More to the point, who decides what a reasonable objection is — one of the parties? The successor engineer or the courts?[1]
In Grenier v. Compratt Construction Co., 189 Conn. at pp. 148-149, the court noted that the parties can agree that a third party such as an engineer acting in good faith can decide which one of the parties has fulfilled contractual requirements.
 ". . . In such circumstances, if the architect or engineer withholds certification, and his decision is not arbitrary or made in bad faith, a court is not authorized to substitute its judgment for that of the designated expert. . . . . . . CT Page 838 The regular enforcement of conditions is, however, subject to the competing but equally well established principle that the occurrence of a condition may be excused in the event of impracticability "if the occurrence of the condition is not a material part of the agreed exchange and forfeiture would otherwise result." 2 Restatement (Second), Contracts § 271; 6 Corbin, Contracts (1962) § 1362; 5 Williston, Contracts (3d Ed. 1961) § 793. Excuse of the condition, in such circumstances, is based upon the presumption that insistence on an impracticable condition was not in the contemplation of the parties when they entered into their contract. 6 Corbin, supra, p. 449; 5 Williston, supra, p. 783. A prime example of an excused condition, in the context of building contracts, arises upon the death or insanity of the architect or engineer who was to have certified performance. If the work has been properly done, presentation of the unavailable architect's or engineer's certificate is excused. See Hebert v. Dewey, 191 Mass. 403, 410-11, 77 N.E. 822 (1906); 6 Corbin, supra, pp. 503-504; 5 Williston, supra, § 796. Although this court has not had the occasion to adjudicate a case involving an engineer's death or insanity, we have recognized that enforcement of a condition depends upon a finding of the intent of the parties as evidenced by their agreement; . . . . . . . and that an agreement for personal services is normally subject to the condition that the person who is to render the services must be able to perform at the appointed time."
Obviously, Grenier is not directly on point as to the factual issue raised but its principles apply here.
There is a factual dispute here surrounding the circumstances of the appointment of Black Veatch, the purported successor engineer, and whether, therefore, such an "engineer" was in place to decide contract disputes. The terms of this contract do not CT Page 839 permit an interpretation that even that issue should be decided by an engineer — why would the parties agree to that, engineers are not legal experts as far as interpreting contracts are concerned. The city's right to enforce the contract condition that lies at the basis of its motion to dismiss given the factual circumstances of this case relative to the appointment of Black 
Veatch as successor engineer "depends upon a finding of the intent of the parties as evidenced by their agreement" (See quote from Grenier supra).
By relying on the vehicle of a motion to dismiss based upon purported jurisdictional grounds this court cannot deprive a party of its right to have factual issues determined by a judge or jury at trial. But even if the interpretative analysis required would be a question of law for the court, a motion to dismiss cannot be used as a mechanism to elevate this question of law to an issue of subject matter jurisdiction.
The Court denies the Motion to Dismiss.
CORRADINO, J.