## MULTI-SERVICE CONTRACTORS, INC. *v.* TOWN OF VERNON ET AL.
### (11213)

PETERS, HEALEY, SHEA, GRILLO and HENNESSY, Js.

Argued April 12—decision released June 19, 1984

*Richard J. Broadman,* with whom, on the brief, was *John G. Tunila,* legal intern, for the appellant (plaintiff).

*Francis H. Morrison III,* with whom, on the brief, was *J. Rene Frechette,* for the appellees (defendant members of the building committee of the town of Vernon).

*Mitchell E. Kallet,* town attorney, for the appellee (named defendant).

PETERS, J. This case concerns the scope of liability of a municipal property owner and the members of the municipality's building committee for nonpayment of moneys allegedly due under a construction contract. The plaintiff, Multi-Service Contractors, Inc., brought an action in four counts, three of which sought to recover from the defendant, the town of Vernon, for breach of contract, and the fourth of which sought damages from the named members of the permanent municipal building committee of the town of Vernon[1] for tortious interference with the contract between the plaintiff and the defendant town. The trial court, *Budney, J.,* granted the defendants' motion for summary judgment on the fourth count. The trial court, *Schaller, J.,* thereafter denied a motion by the plaintiff to amend its complaint to add a fifth count in tort charging the defendant town with negligence and fraud, and, after a full trial, rendered judgment for the defendant town. The plaintiff has appealed from each of these adverse rulings.

The trial court's memorandum of decision reveals the following. The plaintiff and the defendant town entered into a contract on October 28, 1977, under which the plaintiff agreed to construct the footings and the foundation for a new town police headquarters. Under the terms of the contract, the work was to begin on November 2, 1977, and was to be completed not later than January 5, 1978. In lieu of performance, labor and materials bonds, the plaintiff executed a letter of delayed payment stipulating that "no payment will be made on the contract until final completion of the work and

---

[1] The named defendants were John Drost, Robert Marshall, Donald Gardini, Noel B. McCarthy, Joseph Dagata, Eugene Pinto, Marion Narkawicz and Franklin Sykes.

acceptance by the architect and owner," except that the owner had the right, at its discretion, upon receipt of properly executed applications and certificates for payment, to make partial payment. The plaintiff received payments from the defendant town totalling $44,399.10, but the remainder of the $58,436 contract price was not paid. The defendant town issued two formal change orders totalling $1425 on the same payment terms as were applicable to the remainder of the contract.

Despite the fact that the contract called for performance to be completed by January 5, 1978, the plaintiff did not terminate its work until May 27, 1978. This delay was found by the trial court to have resulted from the plaintiff's negligence and failure properly to perform the contract, in particular from the plaintiff's failure properly to protect the work site from adverse weather conditions and its failure to have the necessary personnel and equipment on the job site.

The trial court further found that the plaintiff had failed to comply with the procedural conditions of the contract. Although the plaintiff at trial claimed a right to additional compensation for work which constituted "extras," it had not, except in two limited instances, applied for the requisite formal change orders. With respect to its claimed entitlement to a final payment, the plaintiff had never submitted, as the contract required, a final certificate for payment to be issued by the architect upon completion of the work. No such final certificate for payment could have been issued without a written notice that the work was ready for final inspection and without an affidavit that all indebtedness connected with the work had been paid. The plaintiff never filed either a proper application for a final certificate nor did it tender the necessary documentation therefore. There were in fact unpaid bills

from subcontractors on the job. The defendant town had not waived the requirement of compliance with the contractual document.

On the basis of these findings of fact, the trial court concluded that the defendants were liable neither for the unpaid principal amount of the contract price nor for the claimed extras. The trial court also concluded that the plaintiff had failed to produce any credible evidence in support of its claims of loss of profit and damage to reputation and financial standing.[2]

The plaintiff, in its appeal, claims that the trial court improperly: (1) granted summary judgment with respect to the plaintiff's claim of tortious interference with its contract; (2) denied the plaintiff's motion to amend its complaint; (3) enforced the contractual conditions on the plaintiff's right to collect the contract price; and (4) denied the plaintiff's claim for compensation for extra work. We find no error.

I

In the fourth count of its complaint, the plaintiff alleged that the members of the permanent municipal building committee of the town had individually and in their official capacities interfered tortiously with the contract between the plaintiff and the town by complaining about the quality of the plaintiff's work, by requiring the plaintiff to attend meetings concerning the progress of the work, and by usurping the role of the architect and ignoring his approval in order to withhold payments properly due for work performed by the plaintiff. In supporting affidavits responding to the individual defendants' motion for summary judgment, the plaintiff reiterated that the individual defendants had made performance demands which the plaintiff deemed

---

[2] No appeal has been taken from the court's additional ruling rejecting the defendant town's claim to reduce the contract sum because of work done by another contractor which was allegedly the plaintiff's responsibility.

unreasonable, particularly by insisting that the work be completed within the deadline provided by the contract. Neither in the complaint nor in these affidavits were the defendants expressly charged with having acted in bad faith. There was no express claim that the conduct of the defendants did not fall within the scope of their authority, pursuant to the town charter, "to act as agent of the Town to . . . engage architects and engineers and approve plans, procure bids and enter into contract [sic] for construction, supervise construction, and accept the work." Vernon Town Charter, Ch. VIII, § 9.

The trial court held that the individual defendants' motion for summary judgment should be granted because there can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contracts. *Paint Products Co.* v. *Minwax Co.,* 448 F. Sup. 656, 658 (D. Conn. 1978); *Kecko Piping Co.* v. *Monroe,* 172 Conn. 197, 201–202, 374 A.2d 179 (1977); *R an W Hat Shop, Inc.* v. *Sculley,* 98 Conn. 1, 14, 118 A. 55 (1922); *Hiers* v. *Cohen,* 31 Conn. Sup. 305, 312, 329 A.2d 609 (1973). As agents of the town which was a party to the contract, the named defendants could not be considered strangers to the contract at issue.

The plaintiff does not challenge the legal proposition upon which the trial court acted, but asserts that the pleadings and the affidavits raised a genuine issue as to a material fact so that summary judgment was inappropriate. Practice Book § 384.[3] The plaintiff relies on cases in which we have held that questions about motive, intent and good faith should not be resolved by sum-

---

[3] "[Practice Book] Sec. 384. ——JUDGMENT.

"The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

mary judgment; *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 381, 260 A.2d 596 (1969); to argue that if the individual defendants in this case acted in bad faith, maliciously, wantonly or beyond the scope of their authority, they became third parties to the contract and would then be liable for tortious interference. The plaintiff failed, however, to present a factual predicate for this argument. The plaintiff's complaint contains no allegations of willful misconduct or lack of good faith. The affidavits at most indicate that the defendants manifested their insistence on timely performance of the contract in a manner that was impatient and overbearing. Such allegations are insufficient to raise a factual issue concerning the defendants' good faith. The trial court therefore properly rendered summary judgment on behalf of these defendants.

## II

On the opening day of the trial of the case against the defendant town, the plaintiff sought leave to amend its complaint to add a fifth count alleging that the defendant's failure to warn the plaintiff of unfavorable subsurface water conditions was a breach of warranty of specifications, a negligent misrepresentation and fraudulent. The plaintiff acknowledged that he sought thereby to add a count in tort to a complaint which otherwise contained only claims for breach of contract. The trial court refused to permit the amendment because of potential prejudice to the defendant unless additional time were allowed to prepare a new defense. The court stated that it did not believe delay of the trial was appropriate since the matters raised by the proposed amendment could have been discovered at an earlier time.

The plaintiff argues on this appeal that the trial court's action was an abuse of the discretion vested in the court by Practice Book § 176.[4] It contests the finding of prejudice and of likely delay in the trial, and argues that it acted diligently to uncover the basic facts upon which the proposed amendment was premised. These claims of excuse for the belated filing were, however, not presented to the trial court when the motion was being ruled upon. The court was therefore entitled to presume that discovery could have been pursued more vigorously and town records examined at an earlier time. We have not previously found an abuse of discretion when a trial court, on the eve of trial, concluded that prejudice and delay would result from a substantial amendment to the plaintiff's complaint, and we decline to do so in the present circumstances.

---

[4] "[Practice Book] Sec. 176. ——AMENDMENT BY CONSENT, ORDER OF COURT, OR FAILURE TO OBJECT.

"Except as provided in Sec. 182, a party may amend his pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(a) By order of court; or

"(b) By written consent of the adverse party; or

"(c) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party as provided by Sec. 120, and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing, specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party as provided by Sec. 120 and with proof of service endorsed thereon, be filed with the clerk within the time specified above and placed upon the next short calendar list.

"The court may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. If the amendment occasions delay in the trial or inconvenience to the other party, the court may award costs in its discretion in his favor. For the purposes of this rule, a substituted pleading shall be considered an amendment. (See Gen. Stat., § 52-130 and annotations.)"

*Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 302–303, 460 A.2d 488 (1983); *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980).

## III

The trial court, in rejecting the plaintiff's contract claims, found that the delay in the plaintiff's perform-ance of the contract was attributable to default on the part of the plaintiff rather than the defendant town, and that the plaintiff's recovery was barred by its non-compliance with procedural conditions contained in the contract. On this appeal, the plaintiff does not contest the findings of default and noncompliance. Instead, the plaintiff urges us to adopt a position, which it candidly characterizes as a minority view, that, in order to avoid a forfeiture, a contracting party which has substantially performed a contract should not be barred from recov-ery by enforcement of a contractual condition. The plaintiff rests its argument of substantial performance on the undisputed fact that the defendant town has occupied its new police headquarters since June, 1979. We conclude that the plaintiff's argument is unpersua-sive both factually and legally.

The plaintiff's claim of substantial performance lacks a factual basis because we cannot determine to what extent the value of the plaintiff's performance was diminished by the unexcused delay in its completion.[5] In the absence of a finding by the trial court that the delay was of no consequence, we cannot assume that principles of forfeiture, if applicable, would require recovery of the entire unpaid contract price, without some offset for costs incurred by the town because of the plaintiff's delay. No reason has been advanced, nor authority cited, for the proposition that the defendant town, which has never formally accepted the plaintiff's

---

[5] In the pleadings, the plaintiff alleged, and the defendant denied, that the plaintiff "did complete substantially the work required."

performance, should bear the responsibility of establishing the net value of the plaintiff's services.

It is precisely in order to avoid vexatious questions about substantial completion that the law of contracts permits the parties to rely on contractual conditions to establish procedural guidelines to signal when work has been completed and accepted. Our law does not, as the plaintiff maintains, permit trivial deviations from contract terms to result in forfeiture of a contractor's work. On the contrary, after a review of the relevant cases, we held only last year in *Grenier* v. *Compratt Construction Co.*, 189 Conn. 144, 148–49, 454 A.2d 1289 (1983), that "[t]he regular enforcement of conditions is . . . subject to the competing but equally well established principle that the occurrence of a condition may be excused in the event of impracticability 'if the occurrence of the condition is not a material part of the agreed exchange and forfeiture would otherwise result.' 2 Restatement (Second), Contracts § 271; 6 Corbin, Contracts (1962) § 1362; 5 Williston, Contracts (3d Ed. 1961) § 793. Excuse of the condition, in such circumstances, is based upon the presumption that insistence on an impracticable condition was not in the contemplation of the parties when they entered into their contract. 6 Corbin, supra, p. 499; 5 Williston, supra, p. 783."

In the absence of allegation or proof that the plaintiff's noncompliance with the contract conditions was impracticable, or resulted from actions of the defendant town or its agents that were taken in bad faith, the plaintiff has failed to make out a case for equitable or restitutionary relief. The plaintiff's bald assertion that the defendant's architect failed to act in a neutral and professional manner because the architect, having been engaged by the town, acted as its agent and at its direction, does not suffice to raise an issue of bad

faith.[6] The trial court found no improper conduct by the defendant town and no waiver of the contractual conditions to payment. In these circumstances, the plaintiff has failed to establish that compliance with the conditions should be excused.

The plaintiff's claim of entitlement to contractual extras cannot prevail in light of our resolution of the issue of the enforceability of the contract's conditions. As the trial court correctly noted, recognition of further extras would not have affected the provisions of the contract making the architect's certificate and the affidavit of payment prerequisites to final payment of any and all sums due under the contract.

There is no error.

In this opinion HEALEY, GRILLO and HENNESSY, Js., concurred.

SHEA, J., concurring. I disagree only with the portion of the opinion which states that "[t]he plaintiff's claim of substantial performance lacks a factual basis because we cannot determine to what extent the value of the plaintiff's performance was diminished by the unexcused delay in its completion." The opinion also refers to "the absence of a finding by the trial court that the delay was of no consequence . . . ."

---

[6] The plaintiff claims that the defendant town was barred from relying on the conditions precedent in the contract because they were not specially pleaded as special defenses to the plaintiff's complaint as required by Practice Book § 164. The record before us, including ambiguities in the plaintiff's own brief, makes it unclear that this claim was properly raised in the trial court. In any event, the plaintiff itself addressed the performance of the contractual conditions, in its complaint, in paragraph 3 of the first count, stating: "Pursuant to said contract, Plaintiff Multi-Service undertook the performance of its obligations in accordance with the plans, specifications and general and special conditions of said contract and did complete substantially the work required." The defendants' answer denied the allegations contained in this paragraph. The plaintiff's compliance with the contractual conditions was therefore an issue in the trial.

The trial court had no occasion to make any finding as to the consequences of the delay to the town because no resulting damages were claimed. The only set-off or counterclaim asserted by the town was a chargeback for corrective work performed by another contractor, which the court rejected as unproved. The failure of the town even to raise a claim that it suffered some detriment from the delay certainly allows a reasonable inference that it sustained no such loss. By such conduct the town also may be deemed to have "waived its right to strict compliance with the provisions of the contract as to time of performance." *Bradford Novelty Co.* v. *Technomatic, Inc.,* 142 Conn. 166, 171, 112 A.2d 214 (1955).

I agree, however, that the evidence supported the trial court in finding that the plaintiff failed to prove that he had fulfilled the several prerequisites for final payment established by the contract or that performance of these conditions should be excused for some justifiable reason.

Accordingly, I concur in the result.