JOHN T. BRADY AND COMPANY ET AL. *v.* CITY OF STAMFORD ET AL.

URBAN REDEVELOPMENT COMMISSION OF THE CITY OF STAMFORD ET AL. *v.* FEDERAL INSURANCE COMPANY ET AL.
(14284)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and BERDON, Js.

Argued September 26—decision released November 19, 1991

*William J. Egan,* with whom, on the brief, was *Thomas R. Legenhausen,* for the appellants-appellees (Urban Redevelopment Commission of the city of Stamford et al.).

*Scott D. St. Marie,* pro hac vice, with whom was *William J. Pastore,* for the appellees-appellants (Federal Insurance Company et al.).

*Richard L. Albrecht,* with whom, on the brief, was *Gabriel Miller,* for the appellee-appellant (John T. Brady and Company).

PETERS, C. J. In this action for breach of a commercial construction contract, the principal issue is whether

the trial court, in its evidentiary rulings and its instructions to the jury, assigned proper weight to the terms of three contracts consecutively negotiated by the parties. The appeal arises out of two lawsuits that were consolidated for trial. The first was an action brought by the plaintiffs, John T. Brady and Company (contractor), and its surety and assignee, Federal Insurance Company (surety), to recover the unpaid portion of the contract price and the price of certain alleged contract extras from the defendant, the Connecticut Urban Redevelopment Commission of the city of Stamford (owner).[1] The second was an action brought by the owner and Rich-Taubman Associates (redeveloper) to recover damages from the contractor and the surety because of the contractor's alleged failure to comply with contract specifications in timely fashion. The jury found in favor of the contractor and the surety in both actions, awarding them jointly $2,612,098.84 plus interest in the amount of $1,456,520.49. Following the trial court's denial of motions by the owner and the redeveloper to set aside the verdict and for judgment notwithstanding the verdict, the owner and the redeveloper appealed to the Appellate Court and the surety and the contractor cross appealed. We transferred the appeals to this court in accordance with Practice Book § 4023 and now reverse.

The litigation arises out of a contract between the owner and the contractor, John T. Brady and Company, for the construction of a regional shopping center and garage known as the Stamford Town Center (the project). The contractor undertook to build a nine story parking garage and the shell of an adjacent enclosed shopping mall that the redeveloper was to complete and operate. The named surety and four reinsurance com-

---

[1] The city of Stamford is no longer a party to this litigation, even though it was originally named as codefendant by the plaintiffs in the first case.

panies issued a performance bond underwriting the performance of the contract. The owner and the contractor agreed on a contract price, as amended, of $36,014,993, of which the contractor has been paid $33,028,201.

Three interrelated contracts memorialized the agreement between the owner and the contractor. These contracts consisted of: the underlying construction contract, executed on December 19, 1978, prior to the commencement of construction; the settlement agreement, executed on September 28, 1981, when the project was 94 percent complete; and the completion agreement, executed on June 1, 1982, when the project was 99 percent complete.

The construction contract incorporated relevant drawings and specifications for the project, for which the owner agreed to pay the designated contract price. The contract stipulated that time was of the essence, set January 20, 1981, as the date for completion of the project, and contained a clause liquidating damages in the amount of $3000 each day for any delay after the completion date.[2] The contract defined substantial completion of the project as including the issuance of a final certificate of occupancy.[3] Further, the contract indicated that the contractor would not be entitled to final payment until all of its work had been accepted by the owner.[4]

---

[2] Article 4 of the contract provided in pertinent part: "It is mutually agreed between the parties hereto that time is of the essence of this Contract. As actual damages for any delay in completion of the work are impossible to determine, the Contractor and his sureties shall be liable for and shall pay to the Owner the sum of Three Thousand Dollars ($3,000.00) for each calendar day of delay until the Contract is completed or accepted."

[3] Section 4 (c) of the supplementary conditions to the contract provided: "The Contractor shall substantially complete, including obtaining a final certificate of occupancy, and have the Project ready for occupancy and use as a public parking facility no later than seven hundred thirty (730) consecutive calendar days from the start of construction."

[4] Section 9 (d) of the general conditions to the contract provided: "Upon completion and acceptance of all work required hereunder, the amount due

In order to resolve substantial disagreements about delay in the performance of the contract and responsibility for extra work, the parties negotiated a settlement agreement on September 28, 1981, eight months after the completion date contained in the construction contract. The settlement agreement provided, inter alia, that: (1) the owner would pay the contractor $2,250,000; (2) the contractor immediately released the owner from all claims arising prior to that time; (3) the owner immediately waived any claim for liquidated damages until after January 20, 1982; (4) the owner agreed to waive its claim for actual damages due to delay, stipulated by the parties to amount to $800,000, if the contractor substantially completed the project by January 20, 1982; and (5) the parties agreed that the completion date could be extended under specified circumstances.

The project was not completed by the revised completion date of January 20, 1982. Relying on the extension provision in the settlement agreement, the contractor maintained that this delay resulted from the absence of timely instructions and the issuance of belated change orders. Because the owner disagreed with the validity of these claims, it paid the contractor only $1,375,000 of the additional $2,250,000 promised in the settlement agreement, and refused to waive the $800,000 in actual delay damages stipulated in that agreement. The resultant financial difficulties led the

the Contractor under this Contract shall be paid upon certification by the Engineer and approval by the Owner, after the Contractor shall have furnished Owner with a release in satisfactory form of all claims against the Owner arising directly or indirectly under this Contract, other than such claims, if any, as may be specifically excepted by the Contractor from the operation of the release; provided, each such exception shall embrace no more than one claim, the basis and scope of which shall be clearly defined and the amount stated; and provided further, the amounts of such excepted claims shall not be included in the application for final payment."

contractor, in March of that year, to assign its contract rights to the surety, which thereupon began funding further work on the project.

On June 1, 1982, the owner, the contractor and the surety entered into the completion agreement. By the terms of that contract: (1) the surety agreed to finance the resumption of work on the project so that it could be completed by July 9, 1982; (2) the owner agreed to waive any claim for delay damages sustained between the new completion date and the prior revised completion date of January 20, 1982; (3) the owner agreed to pay $1,000,000 upon substantial completion of the project by the new completion date; (4) the surety agreed to obtain releases of mechanic's liens; and (5) the owner agreed to make monthly progress payments. Like the settlement agreement, the completion agreement provided that the new completion date could be extended for reasons enumerated in the agreement.

The project was not completed on July 9, 1982. Alleging that certain important work remained undone or unaccepted, and that mechanic's liens had not been released, the owner withheld further payments. On August 19, 1982, the contractor sued to recover the unpaid contract price and an additional amount representing the cost of alleged extra work. The complaint also contained a count for prejudgment interest. This cause of action, with the surety replacing the contractor as the real party in interest, is the first of the lawsuits before us on this appeal.

Despite the lawsuit, work continued on the project, resulting in the issuance of a temporary certificate of occupancy on October 22, 1982. Maintaining that it had completed its work on the project, the contractor left the work site on January 5, 1983. The owner continued to insist that there were uncorrected defects in the contractor's performance. When the surety refused a

request for further corrective work, the owner engaged another contractor to complete the project. This aspect of the controversy between the parties was the basis for the second cause of action before us, a suit by the owner and the redeveloper to recover liquidated and actual damages because of the contractor's delay in completing the project, and actual damages because of the contractor's allegedly unsatisfactory performance of the contract, in the total amount of $3,225,907.14 above and beyond the remaining balance on the contract price. Like that of the contractor and the surety in the first case, the complaint of the owner and the redeveloper included a claim for prejudgment interest.

The trial of these consolidated causes of action began with jury selection in April, 1989. The trial itself began on July 5, 1989, and continued until April 24, 1990, when the jury returned its verdict. Because of the volume and complexity of the pleadings, the court and the parties had agreed that the pleadings would not go to the jury. The trial court had rejected requests for interrogatories filed on behalf of the surety, the owner and the redeveloper. The jury returned a single verdict in both cases, finding that the surety was entitled to $2,612,098.84 plus interest in the amount of $1,456,520.49. The parties stipulated that they would accept the mathematical calculation of the interest by the jury. The trial court, having earlier denied the owner's request for a directed verdict, also denied posttrial motions by the owner and the redeveloper for a mistrial, to set aside the verdict, and for judgment notwithstanding the verdict. The present appeal ensued.

I

The appeal by the owner and the redeveloper challenges: (1) the sufficiency of the evidence adduced to support a verdict on the first cause of action, and hence the propriety of the trial court's denial of the owner's

motions for a directed verdict and for judgment notwithstanding the verdict; (2) the trial court's evidentiary rulings and jury charge concerning the effect of the release provisions in the settlement agreement; and (3) five other statements of law contained in the charge to the jury.[5] We disagree with the first of these claims, but agree that the trial court made so serious an error in its evidentiary rulings that a new trial is required. We will consider other aspects of the trial court's charge only to the extent that such discussion is necessary to guide the court at a new trial.

A

The owner contends that the surety was not entitled to recover the balance of the contract price because the construction contract conditioned a right to final payment on "completion and acceptance of all work required [under the contract and] . . . upon certification by the Engineer and approval by the Owner" after payment of all subcontractors. The contract defined substantial completion as including the issuance of a final certificate of occupancy. Relying on *Multi-Service Contractors, Inc.* v. *Vernon,* 193 Conn. 446, 477 A.2d 653 (1984), the owner asserts that noncompliance with these contractual conditions defeats the surety's claim as a matter of law. On this theory, the owner maintains that the trial court improperly denied its motions for directed verdict and for judgment notwithstanding the verdict. We are unpersuaded.

"Directed verdicts are not favored. *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982)[;] *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986). Our review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must

---

[5] All the claims of error were adequately preserved in the trial court.

consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich v. Ortiz,* 196 Conn. 498, 501, 493 A.2d 236 (1985); giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141 (1965). The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 667, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986) . . . ." (Internal quotation marks omitted.) *Iseli Co.* v. *Connecticut Light & Power Co.,* 211 Conn. 133, 140, 558 A.2d 966 (1989).

In *Multi-Service Contractors, Inc.* v. *Vernon,* supra, 454, in contrast to this case, there was, on appeal, no factual dispute that delay in the contractor's performance "was attributable to default on the part of the [contractor] rather than the [owner]." The only issue there was whether, despite its default, the contractor could avoid compliance with contractual conditions on its right to payment. We held that, "[i]n the absence of allegation or proof that the [contractor's] noncompliance with the contract conditions was impracticable, or resulted from actions of the [owner] or its agents that were taken in bad faith, the [contractor had] failed to make out a case for equitable or restitutionary relief." Id., 455. In this case, however, the surety maintains, and the jury impliedly found, that the owner's conduct, including its withholding of payments, was a significant contributing factor in the problems encountered by the contractor in completing the project. It was not unreasonable for the trial court to determine that the surety had produced sufficient evidence on this disputed question of fact to leave its resolution to the jury.

## B

The evidentiary claim of error raised by the owner and the redeveloper arises out of the express terms of the settlement agreement negotiated between the owner and the contractor on September 28, 1981. In response to the disputes that had led to its execution, the settlement agreement contained a number of provisions purporting to liquidate liabilities arguably accrued prior to its date. The parties agreed that, in return for two payments totaling $2,250,000, the contractor would release the owner from claims for extra work "through the date hereof." In addition, the contractor unconditionally released the owner and redeveloper from liability "for damages because of hindrances, interference or delay from any cause in the progress of the work," acknowledged that the owner had incurred actual delay damages of $800,000 to date, and attested that "as of the effective date hereof the Owner has fully met its obligations under the Contract."[6]

On July 3, 1989, prior to the commencement of the presentation of evidence, relying on these provisions, the owner and the redeveloper filed a motion in limine to preclude the surety from offering any evidence at trial attributing responsibility to the owner for delay in the project prior to September 28, 1981. The trial court refused to rule on this motion. Instead, for the first six weeks of trial, over timely and repeated objections, the surety was permitted, in its case-in-chief for recovery of the balance of the purchase price under the contract, to offer evidence to demonstrate that the owner bore the responsibility for delays in the project occurring before September, 1981. Repeated motions

---

[6] At the commencement of the trial, the surety withdrew a claim that the settlement agreement was voidable because the contractor had executed it under duress.

for mistrial on this ground were taken under advisement by the trial court. Not until August 23, 1989, did the trial court rule that it would give effect to the relevant provisions of the settlement agreement. The trial court refused, however, to strike the evidence on this issue that had been previously admitted, and denied the consequent motions for mistrial, saying that it would deal with the problem in its instructions to the jury. In its jury instructions, the following April, the trial court included only the following brief reference to this evidence: "Also, I want to caution you, it has also been a very long trial and you heard a lot of things before the September agreement. Unless they become relevant again in my charge to you, you are to disregard those. So just let's focus in on the issues to be given you in charge."

The trial court should have granted the motion in limine, at least with respect to evidence presented in the surety's case-in-chief to enforce the contractor's contractual rights against the owner. Having abandoned the defense of duress, and thus pursuing a cause of action under the contract, the surety was bound by the unambiguous terms of the settlement agreement. *Albert Mendel & Son, Inc.* v. *Krogh,* 4 Conn. App. 117, 122–23, 492 A.2d 536 (1985); see also *Daley* v. *Hartford,* 215 Conn. 14, 574 A.2d 194, cert. denied, U.S. , 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). The improper admission of so much evidence to the contrary, over an extended period of time, would have been difficult to cure, many months later, even with an extended cautionary warning to the jury in the trial court's final instructions. The curative instruction that was actually given failed effectively to communicate to the jury what evidence had been excluded and what remained for its consideration. In light of the consistent objections to this inadmissible evidence on the record of this case, a new trial is required in the interests of justice.

## C

We will consider the remaining challenges to the instructions given by the trial court only insofar as may be necessary to provide guidance for a new trial. Two issues warrant brief discussion at this time: (1) the relationship between contractual provisions and ameliorating principles of common sense and equitable estoppel; and (2) the jury's role in assessing prejudgment interest.

With respect to the first issue, the owner and the redeveloper contend that the instructions did not assign sufficient weight to the terms of the contracts negotiated by the parties. The instructions included a reference to the general principle that, absent bad faith or duress, contracting parties are free to impose conditions upon their contractual liability. *Dills* v. *Enfield,* 210 Conn. 705, 720–21, 557 A.2d 517 (1989); *Grenier* v. *Compratt Construction Co.,* 189 Conn. 144, 148, 454 A.2d 1289 (1983); *Brauer* v. *Freccia,* 159 Conn. 289, 293–94, 268 A.2d 645 (1970); *Strimiska* v. *Yates,* 158 Conn. 179, 185, 257 A.2d 814 (1969). Nonetheless, throughout its charge, the trial court improperly directed the jury to focus on whether it found the conduct of the parties to be fair and equitable, rather than on whether it found that conduct to be consistent with a reasonable construction of the specific terms of the parties' three interrelated contracts.

With reference to the particular issues before the jury, the court repeatedly invited the jury to exercise its "common sense" and to invoke principles of "equitable estoppel" without regard to the relevant contract provisions. The instructions ignored our repeated holdings that "silence will not operate as estoppel absent a duty to speak." *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.,* 217 Conn. 340, 350, 586 A.2d 567 (1991); *Eis* v. *Meyer,* 213 Conn. 29, 34, 566 A.2d 422 (1989); *State*

v. *American News Co.,* 152 Conn. 101, 113, 203 A.2d 296 (1964); *Flaxman* v. *Capitol City Press, Inc.,* 121 Conn. 423, 430, 185 A. 417 (1936). These instructions improperly deflected the attention of the jury away from the central controverted issues of fact about the performance of the parties in light of their intent as manifested in their written agreements.

With respect to the second issue, the trial court instructed the jury on the parties' right to recover interest, in addition to damages, by leaving that issue to be resolved in the jury's unfettered discretion. The parties correctly do not challenge the propriety of having the jury determine this issue, since interest, as an element of damages, is a factual question within the province of the jury. See, e.g., *Iseli Co.* v. *Connecticut Light & Power Co.,* supra, 143–44; *Canton Motorcar Works, Inc.* v. *DiMartino,* 6 Conn. App. 447, 464, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986). The question remains whether, in leaving this issue to the jury, the trial court should expressly have required the jury to consider the various factors included in the request to charge filed by the owner and the redeveloper. While the request to charge may have been overly detailed, we urge the trial court, on retrial, to provide some guidelines for the deliberations of the jury more illuminating than a skeletonic reference to "the demands of justice."

## II

The surety has filed a cross appeal, raising two issues for us to decide if a new trial is to be ordered. The surety maintains that the trial court improperly precluded it from pursuing: (1) in its case-in-chief, a recovery measured by quantum meruit as an alternative to its recovery on the contract; and (2) in its action on the contract, additional claims for extra work. We agree with the rulings of the trial court.

## A

In the surety's cause of action for breach of the construction contract, the surety maintains that it should have been permitted to offer evidence at trial to persuade the jury that the owner's failure to make timely payments for contract work and extras was so material a breach that the surety was entitled to recover in quantum meruit for the value of the work performed. This measure of damages, according to the surety, should have been presented to the jury as an alternative to the claim for the unpaid balance of the contract and the cost of contract extras. The trial court, after having initiated a discussion with counsel about the possible role of rescission and restitution in the resolution of this case,[7] decided not to permit a claim for quantum meruit to be pursued. We agree that evidence relating to a claim for quantum meruit was properly excluded.

At the time when the surety filed its lawsuit, work on the project was 99 percent complete.[8] In these circumstances, its claim for a remedy in restitution measured by quantum meruit is governed by § 373 (2) of the Second Restatement of Contracts (1981), which provides: "The injured party has no right to restitution if he has performed all of his duties under the contract

---

[7] The complaint filed by the surety contained no count in rescission, restitution or quantum meruit, but focused solely on the damages flowing from the breaches of contract alleged in the complaint. By its terms, the complaint sought a recovery for specified amounts due and owing the surety as assignee of the contractor, amounts described in the complaint as the unpaid contract balance and the price for extra work. It is not clear, therefore, on what basis the trial court interjected a discussion about rescission and restitution into this case.

[8] For the purposes of the present discussion, a determination of whether work has been fully performed does not depend upon whether the owner has reserved claims about the timeliness of the work or about the manner of its performance.

and no performance by the other party remains due other than payment of a definite sum of money for that performance."[9]

Professor Farnsworth suggests that the rule of the Restatement is grounded in the practical perception that "to implement the policy favoring restitution would involve the court in problems of measurement, while recognition of the expectation interest [i.e., the contract price] requires it only to award a sum fixed by the parties." 3 E.A. Farnsworth, Contracts (1990) § 12.20, p. 311; see also 5 A. Corbin, Contracts (1964) § 1110. The inadvisability of judicial reevaluation of the price that the parties have assigned for the work to be performed is rooted in the nature of the remedy that restitution affords a party injured by a material breach of contract. As we have recently noted, because the remedy in restitution is designed to prevent unjust enrichment of the party responsible for a material breach of an enforceable contract, the remedy is measured not by the loss suffered by the *injured party* but by the gain received by the *party in breach. Bernstein* v. *Nemeyer,* 213 Conn. 665, 675–76, 570 A.2d 164 (1990); 3 E.A. Farnsworth, supra, § 12.19, p. 305; 1 G. Palmer, The Law of Restitution (1978) § 4.1, p. 369; 3 Restatement (Second), Contracts (1981) §§ 344 (c), 370 and 371; see *Monarch Accounting Supplies, Inc.* v. *Prezioso,* 170 Conn. 659, 665–67, 368 A.2d 6 (1976); *Franks* v. *Lockwood,* 146 Conn. 273, 278, 150 A.2d 215 (1959). Furthermore, "[t]he award of a restitutionary remedy for breach of contract depends upon a showing of what justice requires in the particular circumstances." *Bernstein* v. *Nemeyer,* supra, 675. After full

---

[9] We need not decide today whether the rules that govern remedial rights in the event of full performance are equally applicable in the event of substantial performance. We therefore do not need to resolve the disparate meanings that the parties attribute to *M.J. Daly & Sons, Inc.* v. *New Haven Hotel Co.,* 91 Conn. 280, 287–89, 99 A. 853 (1917).

performance of a contract, the appropriate measure of the value of the benefit conferred upon the party in breach is the value that the parties themselves, in their contract, have assigned to that performance, in the absence of some special showing such as a lack of good faith, unconscionability, or "abuse of contract." See E.A. Farnsworth, "Your Loss or My Gain? The Dilemma of the Disgorgement Principle in Breach of Contract," 94 Yale L.J. 1339, 1384–86 (1985).

Our application of the Restatement rule finds support, furthermore, in case law in other jurisdictions barring contractors who have fully performed from recovering damages in excess of the contract price. See, e.g., *United States* v. *Americo Construction Co.*, 168 F. Sup. 760, 761–62 (D. Mass. 1958); *Siebler Heating & Air Conditioning* v. *Jenson*, 212 Neb. 830, 833–34, 326 N.W.2d 182 (1982); *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 70 N.Y.2d 382, 388–90, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987). The court's reasoning in *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, supra, 389, is especially persuasive: "It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties . . . . Here, it is undisputed that the relationship between the parties was defined by a written contract, fully detailing all applicable terms and conditions, and specifically providing for project design changes with adjustments in compensation contemplated in light of those changes. Notwithstanding [the contractor's] claim that [the owner] breached the contract, [the contractor] chose not to rescind the agreement, but instead to complete performance of the contract and sue to recover damages, which of course was [the contractor's] right. Having chosen this course, however, [the contractor] is now

limited to recovery of damages on the contract, and may not seek recovery based on an alleged quasi contract."[10]

## B

The surety also maintains that, in its cause of action for damages pursuant to the construction contract, the trial court took too narrow a view of the extra work claims on which the surety was entitled to present evidence to the jury. The June, 1982 completion agreement contemplated the contractor's submission, by August 9, 1982, of claims for extra work arising subsequent to the date of the settlement agreement. In timely fashion, the contractor submitted forty-seven extra work claims with a claimed value of $1,160,000, none of which the owner paid. At the trial, the surety sought to recover $900,972 for extra work, but was only permitted to present evidence to the jury with respect to $24,921 of these claims.

The trial court excluded many of the extra work claims in reliance on the "Inspection" clause in the construction contract. The trial court held that the surety could not recover for work that the project engineer had rejected as incomplete or nonconforming, because the parties had agreed, in the construction contract, that "[t]he Engineer shall have the right to reject defective material and workmanship or require its correction." We agree. "[C]ontracting parties are free to

---

[10] The cases cited by the surety for the contrary view are not directly on point. Several of them deal with questions of substantial rather than full performance. See, e.g., *M.J. Daly & Sons, Inc.* v. *New Haven Hotel Co.,* 91 Conn. 280, 99 A. 853 (1917). The court's rulings in favor of claims sounding in quantum meruit in *Rossetti* v. *New Britain,* 163 Conn. 283, 292, 303 A.2d 714 (1972), and *Morici* v. *Jarvie,* 137 Conn. 97, 101–102, 75 A.2d 47 (1950), do not indicate that any claim was raised, in either case, that the performance of the plaintiffs therein was so complete that they should have sued on the contract.

impose conditions upon contractual liability. *Brauer* v. *Freccia,* 159 Conn. 289, 293–94, 268 A.2d 645 (1970); *Strimiska* v. *Yates,* 158 Conn. 179, 185, 257 A.2d 814 (1969). Frequently, building contracts provide that a third party, an architect or an engineer, acting in good faith and in the exercise of his best judgment, shall decide when one of the contracting parties has fulfilled the requirements of the contract. In such circumstances, if the architect or engineer withholds certification, and his decision is not arbitrary or made in bad faith, a court is not authorized to substitute its judgment for that of the designated expert. *Maskel Construction Co.* v. *Glastonbury,* 158 Conn. 592, 597, 264 A.2d 557 (1969); *Friend* v. *Green,* 146 Conn. 360, 364–65, 151 A.2d 343 (1959); *Dahl* v. *Edwin Moss & Son, Inc.,* 136 Conn. 147, 153–54, 69 A.2d 562 (1949); *Clover Mfg. Co.* v. *Austin Co.,* 101 Conn. 208, 213, 125 A. 646 (1924); *Chatfield Co.* v. *O'Neill,* 89 Conn. 172, 174, 93 A. 133 (1915)." *Grenier* v. *Compratt Construction Co.,* 189 Conn. 144, 148, 454 A.2d 1289 (1983). In light of these precedents, the fact that the construction contract contained an alternate dispute resolution clause, presumably to permit arbitration of other disputes under the contract, does not undermine the categorical nature of the inspections clause.

The surety also asks us to review the rulings of the court rejecting claims for extra work that, in the view of the court, lacked a sufficient evidentiary basis. With respect to these work orders, the surety attempted to meet its burden of proving the cost of labor and materials by proffering evidence of contemporaneous estimates rather than actual costs. The construction contract provision for change orders specified, however, that, absent an agreement about the cost of work extras, "[t]he term Cost of the Work means the sum of all costs necessarily incurred and paid by the Contractor in the proper performance of the Work." In

light of this provision, and other factual infirmities in the evidence offered, the court correctly concluded that the cost estimates proffered by the surety were insufficiently probative to be admissible to prove the actual costs that the contractor had incurred. See *Grenier* v. *Compratt Construction Co.,* supra.

## III

The final issue before us is the cross appeal of the contractor, who challenges the validity of the trial court's ruling precluding the contractor from presenting its own defense. The contractor was not permitted to cross-examine adverse witnesses, to make objections to adverse evidence, or to present a closing argument to the jury.[11]

The trial court's ruling to exclude the contractor from participation in the trial was premised on its finding of an identity of interest between the surety and the contractor. That finding was supported by the following facts. With respect to the first case, the action to recover the unpaid contract price and the cost of contract extras, the contractor, on March 10, 1982, prior to the beginning of the trial, had assigned all its rights to any claims or judgments to the surety. With respect to the second case, the action by the owner and redeveloper to recover damages for work improperly performed, that action was not a suit on the construction contract but a suit against the surety on its performance bond. Although the contractor was named in that litigation as an interested party in view of its contractual role as the principal on the performance bond, the contractor could not be held accountable in that suit unless the surety were held liable.

The trial court's decision to exclude the contractor was an exercise of its broad discretion to manage the

---

[11] No issue has been raised in this case about the contractor's ability to exercise peremptory challenges to prospective jurors.

presentation of evidence and the scope of cross-examination in civil cases.[12] See *Gurecki* v. *Johnson,* 175 Conn. 297, 298, 398 A.2d 311 (1979); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 3.4.3, p. 43. The court's finding of an identity of interest between the surety and the contractor distinguishes this case from *Commercial Union Ins. Co.* v. *Frank Perrotti & Sons,* 20 Conn. App. 253, 566 A.2d 431 (1989). As a general matter, because identity of interest is not to be presumed, separate defendants (or plaintiffs) are entitled to be treated as separate parties for purposes of cross-examination. Id., 262–63. When, however, parties have substantially the same interests, they "should not be permitted to examine witnesses in relays." *Guy* v. *Rudd,* 345 F. Sup. 1382, 1385 (W.D. Pa. 1972), rev'd on other grounds, 480 F.2d 677 (3d Cir. 1973); see also 1 J. Moore, Federal Practice, Manual for Complex Litigation (Second) (1986) § 22.22.

In this case, the trial court, ruling in the first instance with regard to the presentation of the evidence in the surety's case against the owner, carefully limited its ruling of identity of interest between the surety and the contractor. The court expressly left open the possibility that future trial developments might "break the unity" between these parties. It thereby invited the contractor to make an appropriate showing of specific instances in which it needed to cross-examine particular witnesses or to make a separate argument. Although the contractor reiterated on several occasions its general desire to participate more fully in the trial, it did not make a particularized showing, as witnesses were examined, of what it wanted to bring to the attention of the jury. On this record, we are persuaded that the contractor was not prejudiced by the ruling of the

---

[12] At the hearing on this question, counsel for the contractor acknowledged that it was within the discretion of the court to make such a ruling.

trial court and that the ruling therefore was not an abuse of its discretion.[13]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[13] At a new trial, the contractor will continue to have the opportunity to exercise independent evidentiary rights if its interests are demonstrably separate from those of the surety.