[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a contract by Westinghouse Elevator Company (Westinghouse) to install an exterior or outdoor glass CT Page 3272 elevator at the Marriott Hotel in Stamford. The plaintiff, Schindler Elevator Corporation (Schindler), alleges in its complaint that it is the "successor" to Westinghouse, that Westinghouse constructed and installed the elevator pursuant to a written contract with the defendant, F. D. Rich Construction Co., Inc. (F. D. Rich), and that it is owed approximately $50,000 as the balance due and unpaid under the contract.
The defendant filed a revised answer, special defense and a counterclaim dated April 20, 1994, in which it denied the material allegations of the complaint. Its special defenses contend that the elevator was inoperable, that both express and implied warranties by Westinghouse had been breached, and that the plaintiff's claim is barred by the statute of limitations set forth in General Statutes §§ 52-576 and 52-581.[1] In its counterclaim, which contains three counts, breach of contract, detrimental reliance on promises and representations made by Westinghouse, and a violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), the defendant contends that Westinghouse knew that the elevator was to be installed on the outside of the hotel building, and therefore would be exposed to inclement weather. The defendant further alleges that the elevator does not function during the winter, that the elevator was constructed and/or installed in an unworkmanlike manner, and that the defendant had previously paid to Westinghouse more money than the elevator was worth because of its operating problems. In the second count of the counterclaim, the defendant asserts that it relied on promises and representations made by the plaintiff's predecessor or assignor, Westinghouse, that the elevator would function properly during the entire year, and that it suffered financial loss due to this reliance. The third count alleges that Westinghouse engaged in unfair and deceptive trade practices in violation of CUTPA.
The plaintiff filed an answer and several special defenses to the defendant's counterclaim, in which it agreed that Westinghouse constructed an elevator at the Marriott pursuant to a contract with F. D. Rich, and knew that it would be located outside and exposed to inclement weather, but otherwise denied the material allegations of the counterclaim. Its special defenses claim that the defendant's counterclaim is barred by the statute of limitations contained in General Statutes §§ 52-576,52-581, 52-577, and 42-110g(f).[2]
This case was referred to Attorney Bernadette Coomaraswamy, CT Page 3273 an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed her report containing the following findings of fact: (1) that the contract for the installation of an outdoor elevator, which was a part of a major renovation of the Stamford Marriott, was between Westinghouse and the defendant, F. D. Rich, which was acting as general contractor and agent for the owner of the subject premises, the First Stamford New Urban Corporation;[3] (2) that the contract was executed on or about October 6, 1983, and contained a provision, among others, that the owner must be satisfied with the elevator before the obligation to pay arose; (3) that the elevator was constructed outside the building and rose unenclosed for 18 stories to a revolving restaurant on the top of the Marriott; (4) that the parties to the contract understood and agreed that the elevator would not function for approximately twenty or thirty days per year because of anticipated high winds, but that, on an average, the outside elevator at the Marriott did not function and had to be shut down for approximately three months a year because of cold air infiltration; (5) that Westinghouse represented that it had constructed other similar outdoor elevators in colder climates, but actually had not done so; (6) that Westinghouse recommended and persuaded the defendant that a glass enclosure or tube for the elevator was not needed, but knew or should have known that such an encasement or enclosure was necessary; (7) that the defendant signed a "Final Acceptance Form" in July, 1986, but the defendant insisted on adding the words "substantial completion" to the form; (8) that the total cost of the elevator, which was installed in July, 1986, was roughly $268,000, of which the defendant has paid all but about $50,000 to Westinghouse; (9) that the contract provided that payment to Westinghouse by the defendant was not to be deemed a waiver of any defective work; (10) that the plaintiff became the successor or "assignee" of Westinghouse in 1989; and (11) that the defendant wrote to Westinghouse in November, 1986, stating that it refused to make any further payments for the elevator because of its dissatisfaction therewith.
The attorney trial referee concluded on the basis of the above findings of fact that: (1) the intent of the contract was to provide a unique outdoor elevator which itself would be a "a veritable tourist attraction" in Stamford, which the referee opined, was a "slick, chic city"; (2) the defendant relied on the superior knowledge of Westinghouse and its purported ability to construct an outdoor elevator in northern climates; (3) the CT Page 3274 addition of the words "substantial completion" to the "Final Acceptance Form" meant that the acceptance of the elevator by the defendant was not unqualified, but rather was conditional upon substantial completion of the project; (4) the defendant never unconditionally accepted the elevator installed by Westinghouse, nor was it ever satisfied with such elevator; (5) Westinghouse failed to fulfill its obligations under the contract with the defendant, and therefore the plaintiff, as successor to Westinghouse, could not prevail on its claim of breach of contract; (6) Westinghouse breached its express warranty that it would provide a functioning outdoor elevator, General Statutes § 42a-2-313(1)(a), and the implied warranty of fitness for a particular use, General Statutes § 42a-2-315; (7) although the defendant knew by at least early 1987 that Westinghouse had breached its contract in that the elevator had to be shut down during the winter months because of cold air infiltration, it did not file a counterclaim until April, 1994, and therefore such counterclaim is time barred by General Statutes § 52-576 regarding breach of contract; (8) the second count of the counterclaim, which alleges a tort, and the third count claiming a violation of CUTPA, are also both timed barred by the three year limitation periods contained in General Statutes §§ 52-577 and 42-110g(f), respectively; and (9) Westinghouse and the plaintiff, as the successor to Westinghouse, had been "more than adequately" compensated for their efforts on this project. The referee concluded by recommending that judgment enter for the defendant as to the plaintiff's complaint, and for the plaintiff with respect to F. D. Rich's counterclaim for reasons of the statute of limitations.
Both the plaintiff and the defendant, pursuant to Practice Book § 438, moved to correct the report. In the case of the plaintiff, it sought corrections to reflect that: (1) the plaintiff's obligation was not to "satisfy" the owner or the defendant, but rather to substantially perform its obligations under the contract, including complying with the plans and specifications for the elevator as prepared by the owner's architect; (2) the "Final Acceptance Form," dated July 3, 1986, contains the words "substantial performance," because that is the proper determination of whether a construction contract has been breached, but said form specifically provided that the elevator was "satisfactory and in accordance with the contract and we (defendant) accept the elevator under the terms and guarantees of said contract;" (3) the contract does not condition payment upon the owner being satisfied with the project, but rather provides CT Page 3275 that Westinghouse shall perform its work under the contract to the "satisfaction" of the owner, the owner's architect and the defendant; (4) although the referee characterized the "critical issue" in the case as whether the plaintiff delivered a "unique" outside elevator as sought by the owner and its general contractor, the defendant herein, the real issue is whether the plaintiff substantially performed the contract in accordance with the plans and specifications prepared by the owner's architect because the contract required Westinghouse to install the elevator "as per plans and specifications . . . by Warner Burns, Toan Lunde;" (5) although there were minor problems concerning this elevator after it was installed in 1986, Westinghouse substantially performed its obligations under the contract, and hence was entitled to payment in full, in accordance with Connecticut law as set forth in, for example, Vincenzi v. Cerro,186 Conn. 612, 614, 442 A.2d 612 (1982); (6) any problems that occurred with the elevator were caused by the specifications, which were provided by the owner's architect, and not by faulty performance by Westinghouse; (7) any cessation of use of the elevator during the winter months was not related to design or installation, but rather was based on a decision by the owner, and, in any event, there was no testimony to the effect that the elevator was inoperable on an average of three months each winter; (8) Westinghouse never claimed it constructed similar outside glass elevators in cold climates, and in any event, such an issue is immaterial; (9) references to breach of warranty are immaterial because, as previously asserted, the issue in this case is whether the plaintiff substantially performed the contract in accord with specifications provided by the owner's architect; and (10) the defendant's agent and representative wrote to the plaintiff on November 18, 1986, that the defendant refused to make any further payments for the elevator.
In response to the motion to correct filed by the plaintiff, the attorney trial referee agreed that her report contained "obvious typographical errors," as well as "some awkwardness of language" and "lack of lyricism," but declined to make any changes in her report or recommendation that judgment enter for the defendant on the complaint. The referee reiterated her theory of the case that the defendant relied on the plaintiff to construct and furnish "a particular and unique structure," and that the plaintiff's assignor had failed to do so to the "satisfaction" of the owner. Hence, according to the referee, Westinghouse had breached its contract and the plaintiff was not entitled to recover from the defendant. CT Page 3276
The defendant moved that the report be corrected to reflect that: (1) letters dated in December of 1987, and in January of 1988, reflected attempts by Westinghouse to remedy problems with the elevator, which problems continued until the "early 1990s"; (2) Westinghouse continued its attempts to fix the elevator long after April, 1988, and a representative of Westinghouse testified that he did not become aware of a cold air infiltration problem until October of 1994, and therefore the statute of limitations for breach of contract had not expired; (3) the language "substantial completion" was added to the "Final Acceptance Form" at the request of the defendant because there were ongoing problems with the elevator; (4) the plaintiff failed to submit evidence that it was the "assignee" of Westinghouse or that it had the right to maintain this action; (5) Westinghouse was responsible for the design of the elevator and furnished the specifications for the elevator to the owner's architect; (6) the only problem that Westinghouse referred to in connection with the proposed exterior elevator was high winds, but it assured the defendant that otherwise the elevator would operate throughout the winter; (7) Westinghouse warranted that it would replace all defective parts and remedy operational failures; (8) the defendant never accepted the elevator in question; and (9) the defendant overpaid the plaintiff by approximately $40,000 because the elevator was inoperable for three winter months.
In response to the motion to correct filed by the defendant, the referee stated that: (1) the "last serious attempt" by Westinghouse to correct the problems with the elevator was in June, 1987, which marks the date the contract with the defendant was breached, notwithstanding some minor repairs to the elevator performed thereafter by Westinghouse, and/or various other subcontractors, and the referee reiterated her conclusion that the defendant's counterclaim was time-barred; and (2) the plaintiff was a "bonafide assignee in interest" of Westinghouse according to the pleadings and "testimony of events." Both the plaintiff and the defendant filed exceptions to the referee's report pursuant to Practice Book § 439, and also submitted the required transcript of the evidence that was introduced at the trial before the attorney trial referee. Both Parties also filed objections to the acceptance of the referee's report in accordance with Practice Book § 440. The plaintiff's exceptions and objections repeat the claims set forth in its motion to correct, and essentially relate to the ruling by the referee that Westinghouse's obligation was to construct a unique CT Page 3277 structure satisfactory to the defendant, whereas the plaintiff repeats its contention that its assignor's duty was to carry out its obligations under the contract, which included complying with specifications prepared by the owner's architect.
The defendant's exceptions and objections also repeat the substance of its motion to correct in the following three respects: (1) Westinghouse, not the owner's architect, supplied the specifications for the elevator; (2) the plaintiff never introduced any evidence that it was an assignee of Westinghouse and did not have the right to maintain this suit; and (3) Westinghouse continued to remedy problems with the elevator until January, 1989, when it sold its elevator business to the plaintiff, and hence the statute of limitations for breach of contract had not expired. The defendant also argues that the referee's statement that the last "serious" effort by Westinghouse to remedy defects in the elevator in June, 1987, misstates the law regarding tolling of a statute of limitations.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716; see also Practice Book § 440.
Therefore, the first issue is whether there is support in the record for the referee's factual findings that Westinghouse breached its contract with the defendant. A review of the transcript indicates that there was sufficient credible support in the record for these findings made by the referee.[4] Although evidence to the contrary was presented at trial, it is axiomatic that "[w]here evidence is in conflict, its probative value is for the trier of fact to determine." Bernard v. Gershman, 18 Conn. App. 652,656, 559 A.2d 1171 (1989).
In addition to determining whether "there was . . . evidence to support the attorney trial referee's factual findings," the second task of the reviewing court is to decide whether "the CT Page 3278 conclusions reached were in accordance with the applicable law."Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153
(1991). See also Practice Book § 440; Bernard v. Gershman, supra,18 Conn. App. 656.
The contract between Westinghouse and the defendant provided, in pertinent part, that the former was obligated to "perform and complete" the work in question to the "satisfaction of the architect, the owner of said premises, and [the defendant]." Our case law on the obligations of parties to a construction contract was set forth in John T. Brady Co. v.Stamford, 220 Conn. 432, 441, 599 A.2d 370 (1991), which held that: "[i]n the absence of allegation or proof that the [contractor's] noncompliance with the contract conditions was impracticable, or resulted from actions of the [owner] or its agents that were taken in bad faith, the [contractor had] failed to make out a case for equitable or restitutionary relief." Id., 441, quoting Multi-Service Contractors Inc. v. Vernon, 193 Conn. 446,454-55, 477 A.2d 653 (1984).
In view of the referee's factual finding that the elevator had to be shut down in the winter months because of cold air penetration, and that Westinghouse was obliged by the contract to supply an elevator that could function properly during the winter months, excluding perhaps 20 to 30 days for high winds, her conclusion that Westinghouse breached its contract with the defendant follows logically and legally, as does her recommendation that Westinghouse's assignee, the plaintiff, is not entitled to recover any money from the defendant.
The plaintiff also claims that the defendant's architect supplied the plans and specifications for the elevator and that Westinghouse simply followed those plans. The record, however, includes testimony of a witness that "[t]he plans and specs were drawn by the architect based on the technical specifications provided by the architect for Westinghouse Company." The same witness testified that the architects "rely entirely on the specification performance of the manufacturer." This was confirmed by the project supervisor for Westinghouse, who testified "our engineers draw up the plans for the installation of the elevator." Thus, the referee was justified in concluding that the plaintiff was not entitled to recover on the theory that its assignor followed the plans and specifications provided by the defendant's architect. CT Page 3279
Regarding the defendant's counterclaim alleging that the plaintiff was not authorized to maintain this suit, not only is this issue immaterial in the sense that the referee determined that the plaintiff could not recover any damages in any event, but the defendant's allegations in the counterclaim appear to contradict this contention. In the first count of the counterclaim, the defendant alleges that "counter-defendant Schindler is the successor to Westinghouse Elevator Corporation." The defendant also contended in this same count that "[a]s the successor of Westinghouse's interest, Schindler is liable to Rich for the final losses and damages as a result of Westinghouse's conduct as aforesaid." In another allegation in the same count, the defendant stated that "[a]s a result of being a successor to Westinghouse, Schindler is liable to the counterclaimant for the diminished value of the product delivered." With these allegations in the counterclaim, it is no wonder that the plaintiff did not deem it necessary to introduce evidence of the details and significance of the purchase by the plaintiff of Westinghouse's elevator division.
As to the defendant's claim that the statute of limitations was tolled because of Westinghouse's efforts to respond to complaints by the defendant, and to make repairs to the elevator, it is clear that Westinghouse sold its elevator business to the plaintiff in January, 1989, and no longer had any involvement in the project. Therefore, the second and third counts of its counterclaim, asserted in April, 1994, alleging a tort and a violation of CUTPA, are both barred by the three year statute of limitations previously discussed.
With respect to the breach of contract count, the referee points out that in November, 1986, some seven and a half years before the counterclaim was filed, the defendant wrote to Westinghouse indicating that it would make no further payments for the elevator because of dissatisfaction with its performance. Thus, the defendant's position at that point was that the plaintiff's assignor, Westinghouse, had breached its contract, but the defendant nevertheless waited almost eight years to assert a counterclaim. Moreover, the referee pointed to early 1987 as the time when the defendant knew that the elevator was not functioning properly because of cold air infiltration and that Westinghouse at that time was experimenting with a new seal type project known as "Seal Eze" in an attempt to cut down the air flow. There is also support in the transcript for the CT Page 3280 referee's further factual finding that Westinghouse only performed minor repairs or "punch-list" items after the elevator was installed in 1986.[5]
The law regarding the tolling of a statute of limitations in the context of providing subsequent repairs after a product is first delivered or installed was discussed in Beckenstein v.Potter Carrier, Inc., 191 Conn. 150, 158-60, 464 A.2d 18
(1983). The Supreme Court held in this case that the statute of limitations on a breach of contract action was not tolled while contractor and manufacturer of roofing materials continued to make repairs after the roof was completed where there was no evidence that the owners actually relied upon those repairs as a basis for not filing a lawsuit. In the present case, the defendant did not offer any such reason for delaying filing its counterclaim.
In conclusion, it appears from reviewing the motions to correct and the exceptions to the report, that the plaintiff and the defendant are both attempting to substitute their own respective version of the facts for those found by the referee, a practice discountenanced in Argentinis v. Gould, 23 Conn. App. 9,19, 579 A.2d 1078, rev'd on other grounds, 219 Conn. 151,592 A.2d 375 (1991). Therefore, based on the standard of review inDills v. Enfield, supra, 210 Conn. 714, the court finds that the referee's recommendations are not illegal or illogical. To the contrary, in the words of Practice Book § 440, her recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, nor any other sufficient reason for rendering the report unacceptable. See Practice Book § 443.
Accordingly, as to the plaintiff's complaint, judgment is entered in favor of the defendant. Judgment is also rendered in favor of the plaintiff with respect to the defendant's counterclaim. No costs shall be taxed.
So Ordered.
Dated at Stamford, Connecticut, this 2nd day of April, 1996.
WILLIAM B. LEWIS, JUDGE